**Todd M. JOHNSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 25544.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 19, 2003.

Motion for Rehearing or Transfer Denied
Jan. 12, 2004.

Application for Transfer Denied
Feb. 24, 2004.

Karen Bourgeois, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charnette D. Douglass, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Todd Johnson, ("Movant"), appeals from the motion court's denial of his Amended Motion to Vacate, Set Aside, or Correct Sentence and Judgment brought pursuant to Rule 29.15.[1] Movant was convicted by a jury of assault in the first degree, § 565.050.2; committing violence to an employee of the Department of Corrections, § 217.385; attempted escape from confinement, § 575.210.2(2); and three counts of armed criminal action,

1. All Rule references are to Missouri Court Rules (2001).

§ 571.015. Movant was also charged and sentenced as a prior offender pursuant to § 558.016.[2] Following an evidentiary hearing on Movant's Rule 29.15 Motion, the motion court denied relief. Appellant now raises two points on appeal, discussed more fully below, based on the motion court's denial of his post-conviction relief motion arising from his allegations that he received ineffective assistance of counsel at trial. We affirm.

■ Appellate review of a motion court's ruling on a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *State v. Clay*, 975 S.W.2d 121, 140 (Mo. banc 1998), *cert. denied*, 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999). Findings and conclusions are clearly erroneous only if, after review of the entire record, we are left with a definite and firm impression that a mistake has been made. *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997).

To prevail on a claim of ineffective assistance of counsel, the movant must establish by a preponderance of the evidence "that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby." *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997). To satisfy the performance prong, the movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Id.* Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

The record shows that at the time of the offenses charged, Movant was an inmate at the Boonville Correctional Center. In the early morning hours of October 22, 1996, Movant and another inmate, Travis Stipe, ("Stipe"), went to the office of the sole corrections officer on duty, Jane Smith, ("Smith"). Stipe asked Smith if she had any aspirins and when Smith rose from her chair to request that they return to their bay, Stipe hit her in the head with an athletic sock containing two combination locks. Stipe attempted to strike her a second time and Smith grabbed onto the sock and reached for her radio. There was testimony at trial that Stipe instructed Movant to get the radio away from Smith and Movant pulled on Smith's hand in an attempt to procure the radio. During the scuffle which ensued, Stipe got behind Smith and choked her until she passed out. Smith testified that prior to losing consciousness she heard Movant tell Stipe "to get the keys and go."

When Smith regained consciousness, she was able to phone for help. Thereafter, she looked around to see if she could locate Stipe and Movant. Other inmates had pulled Stipe away from Smith and had him restrained in a chair. Smith stated that she saw Movant standing against the wall outside the office, and remarked to the other inmates, "There he is." As a result of the attack, Smith suffered multiple bruises and contusions, received numerous lacerations and gashes to her head and face, and a portion of her ear was severed.

2. All statutory references are to RSMo 1994, unless otherwise specified.

At the trial in this matter, Stipe, who was called as a defense witness, testified that he did not plan the escape with Movant and that Movant just happened to be in Smith's office requesting aspirin when he arrived. Throughout his testimony Stipe maintained that Movant had nothing to do with the attack and that he never requested that Movant retrieve the radio from Smith. Testifying on his own behalf, Movant admitted that he had talked in general about escaping with other inmates, including Stipe, but that he had never actually made plans to do so. He asserted that he had nothing to do with the attack on Smith, he only witnessed it.

Movant was convicted on all six counts for acting in concert with Stipe, and was sentenced to twenty-five years in the Missouri Department of Corrections, with all counts to be served concurrently, but consecutive to a prior seven-year sentence. On direct appeal to this Court, we affirmed the judgment and sentence of the trial court in an unreported memorandum opinion. *Johnson v. State*, No. 22943, Mem. Op. (Mo.App.S.D. Sept. 25, 2000). Thereafter, on December 6, 2000, Movant filed a *pro se* Rule 29.15 motion, which was followed by an amended Rule 29.15 motion. An evidentiary hearing was held on October 18, 2002, after which the motion court entered its findings of fact and conclusions of law denying Movant's Rule 29.15 motion. This appeal followed.

In his first point Movant asserts that the trial court erred in denying his Rule 29.15 motion for post-conviction relief, in that his trial counsel elicited prejudicial testimony from him regarding nine inadmissible conduct violations he incurred while an inmate at the Department of Corrections.[3] He argues that the conduct violations were inadmissible evidence, which could not have been brought up by the State, and that their introduction prejudiced the outcome of his case.

On direct examination, defense counsel, Candace Bante, ("Bante") asked Movant about a number of Department of Corrections conduct violations that he had incurred while incarcerated. Movant testified about nine conduct violations, including being "out of bounds" by getting a haircut instead of being in class; providing false information; "interfering with count;" possession of contraband in the form of two sharpened toothbrushes; attempted escape; disobeying a direct order; causing a disturbance by not allowing a female corrections officer to pat him down; and destroying state property. He also testified that he received two additional Department of Corrections conduct violations, termed as attempted murder and attempted escape, in relation to the October 22, 1996, incident involving Smith.

At the evidentiary hearing on the amended motion, Bante testified that she was aware the conduct violations were not criminal convictions and could not be used for impeachment purposes. She opined that "there were witnesses from the Department of Corrections that I believed were going to drop or interject these violations into their testimony." Furthermore, she stated that the primary reason for eliciting the testimony "was to show that ... very minor infractions could warrant disciplinary action [and that] his actions

---

**3.** A "Department of Corrections conduct violation", or "CDV" as referred to in the record, is an internal administrative punishment system that punishes inmates for behavior which violates Department of Corrections rules or warrants disciplinary action of some type. It is not a criminal violation. Examples of punishment for a "CDV" include: placing the inmate in administrative segregation, requiring the inmate to perform extra chores, loss of privileges, and verbal reprimands.

had never been violent or escape prone, and ... I wanted to take the ... sting out of any mention of it by the State if they were going to mention it, and I assumed at that point that they probably would." She also related she was trying to lay a background to show that "administratively these people [at the Department of Corrections] were crazy" and that Movant had been "accused of some of the most petty, ridiculous conduct violations [she had] ever heard of in [her] life and ... they had been grandiosely labeled ... and ... distorted." Bante did acknowledge that the violations didn't directly establish his guilt for the offense charged, and that they didn't establish motive, intent, common scheme or plan. The motion court denied Movant's 29.15 motion by finding that counsel's actions were reasonable trial tactics.

■■■■ "Counsel is afforded broad latitude as to questions of trial strategy." *State v. Hamilton,* 892 S.W.2d 774, 784 (Mo.App.1995). "A court will not find ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy." *Id.; State v. White,* 798 S.W.2d 694, 698 (Mo. banc 1990); *see also Knese v. State,* 85 S.W.3d 628, 631 (Mo. banc 2002). Here, there "is a strong presumption that the challenged action constitutes sound trial strategy, thereby rendering it reasonably skillful and diligent." *Strickland,* 104 S.Ct. at 2065. Tactical errors do not establish ineffective assistance of counsel. *State v. Booker,* 945 S.W.2d 457, 458 (Mo.App. 1997). Counsel is allowed wide latitude in conducting a defense and may use his best judgment in matters of trial strategy. *State v. Borders,* 844 S.W.2d 49, 54 (Mo. App.1992). Indeed, there is a strong presumption that counsel provided competent assistance. *Deck v. State,* 68 S.W.3d 418,

425 (Mo. banc 2002). However, for trial strategy to be the basis for denying post-conviction relief the strategy must be reasonable. *See State v. Ervin,* 835 S.W.2d 905, 930 (Mo. banc 1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). To hold otherwise would be to say that any decision of trial counsel no matter how ill-advised could not constitute ineffective assistance. *See State v. Hamilton,* 871 S.W.2d 31, 34 (Mo.App.1993).

Relying on *State v. McCarter,* 883 S.W.2d 75 (Mo.App.1994), Movant asserts that when trial counsel has introduced evidence that is prejudicial to his client, a court may conclude that this conduct does not fall within an acceptable range of competence. *Id.* at 79.

In *McCarter,* a case in which a Movant was charged with sexual abuse of a child he babysat, Movant's trial counsel introduced evidence that Movant had previously been investigated for the sexual abuse of his grandchildren, though no charges had been filed. *Id.* at 75–76. Following the *McCarter* defendant's conviction, at the evidentiary hearing on the Rule 29.15 motion, trial counsel testified that the reason he introduced the document into evidence was to show that "seven years earlier ... a charge had been investigated involving ... some sexual abuse claims and that, for all practical purposes, there was nothing forthcoming as far as criminal charges against Mr. McCarter and that it was probably, in fact, a false report." *Id.* at 78. The motion court ruled that trial counsel had been deficient and failed to exercise customary skill and diligence based on the fact that "[t]here [was] no indication that the State had any intention to call [the grandchildren] as witnesses; and the letter would not have been received in evidence if it had been offered by the State." *Id.* at 77. Finding that there was ineffective assistance of counsel, which

greatly prejudiced Mr. McCarter's case, the motion court granted a new trial. *Id.* at 76. This Court affirmed, finding the motion court's ruling not clearly erroneous. *Id.* at 79.

■ We find that there are similarities between the case at bar and *McCarter.* However, the salient and determinative difference between *McCarter* and the present matter, as discussed in *Hamilton,* 892 S.W.2d 774, is that "[i]n *McCarter,* the motion court found the accused's lawyer rendered ineffective assistance and *granted* post-conviction relief." *Id.* at 784 (emphasis added). Here, as in *Hamilton,* the motion court *denied* post-conviction relief.[4] Again, our role is to decide whether the motion court was clearly erroneous. *Id.*

In making its determination, the motion court in *Hamilton* placed much credence in the motion judge's finding that defense counsel's trial strategy had been to not alienate the jury by immediately objecting to the testimony of the doctor, who was the first witness in the case. And, that as part and parcel of such a strategy, it was necessary to confront the doctor on cross-examination regarding previous molestations of the minor and her sisters by another man before they had become acquainted with the *Hamilton* defendant. The motion court noted that "[t]his fit in well with the general strategy of proving the girls to be skillful deceivers of well-meaning adults," such as the examining doctor *and* the *Hamilton* defendant. *Id.* at 783.

We also observed in *Hamilton* that "the judge who conducted the postconviction proceeding was the judge who presided over the jury trial. As we have seen, the judge carefully considered defense counsel's trial strategy and the tactics by which defense counsel carried it out, and found no ineffective assistance." *Hamilton,* 892 S.W.2d at 784.

■ Here, as in *Hamilton,* the judge who conducted the criminal trial also presided over the post-conviction relief hearing. The motion court judge in the instant matter further issued a 31–page ruling in the form of his Findings of Fact and Conclusions of Law. We discern from the ruling of the motion court that it determined that defense counsel's actions comported with reasonable trial strategy. Trial counsel is not judged ineffective simply because in retrospect his or her decision may seem to be an error in judgment. *State v. Huggans,* 868 S.W.2d 523, 526 (Mo.App.1993). Given the latitude allowed counsel in making strategic choices and being mindful that an accused cannot succeed on a post-conviction relief claim of ineffective assistance of counsel unless he demonstrates there is a reasonable probability that without counsel's errors the result of the trial would have been different, *State v. Stepter,* 794 S.W.2d 649, 656 (Mo. banc 1990), we cannot under the "clearly erroneous" standard of review, convict the motion court of error in rejecting Movant's claim he had received ineffective assistance of counsel

---

4. In *Hamilton* this Court affirmed the motion court's determination that the *Hamilton* defense counsel had not rendered ineffective assistance of counsel based on the exercise of reasonable trial strategy, following defense counsel's deliberate withdrawal of an objection made after the prosecution asked an examining doctor whether he believed the history given the doctor by a minor rape victim, and where the doctor answered in the affir-

mative. *Hamilton,* 892 S.W.2d at 783–84. Additionally, this Court also affirmed the motion court's determination that defense counsel had exercised reasonable trial strategy, despite his failure to object to minor victims' sister's testimony about defendant's sexual activity with her, where the *Hamilton* movant maintained such testimony constituted inadmissible evidence of other bad acts. *Id.* at 782–84.

as to this issue. *Hamilton,* 892 S.W.2d at 784. Point denied.

Movant's second point asserts that trial counsel was ineffective in failing to object to a line of questioning that he feels elicited testimony from him that "was not relevant" and "implied prior misconduct as well as a predisposition for violence...." During cross-examination of Movant, the State began questioning him regarding the "house" to which he was assigned when he arrived at Boonville Correctional Center. After Movant testified that he had been assigned to "two house," the State asked, "Is that known as a trouble house?" Movant responded, "At that time it was, yes, sir." This line of questioning continued without objection by defense counsel until the State began asking questions relating to the "Missouri Prison Inmate Inventory" test, a placement test taken by all inmates, including Movant, upon arrival at Boonville Correctional Center. Defense counsel objected on the basis that the results of the test were inadmissible, because printed on the bottom of the test there is an inscription setting out that "this is an invalid result." Her objection was sustained by the trial court.

At the evidentiary hearing on the Rule 29.15 motion, defense counsel testified that she failed to object to the "trouble house" reference because, "the way I considered it was that known [sic] as the trouble house went to helping Mr. Johnson's case in that, once again, it would be hard to define it as a trouble house when there was a short, round little woman that was the only guard by herself at night." She further stated that she tries to be "judicious" in her objections in an effort to not turn the "jurors against [her] position."

■ Under the *Strickland* standard for determining if counsel has been effective, the failure to object to evidence or argument does not by itself establish ineffective assistance of counsel. *Stuckey v. State,* 756 S.W.2d 587, 591 (Mo.App.1988); *see also Ervin v. State,* 80 S.W.3d 817, 822 (Mo. banc 2002). "The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial." *Stuckey,* 756 S.W.2d at 591.

■ Here, on direct examination, defense counsel asked Movant if "each house [at Boonville Correctional Center had] their own rules." In responding, Movant testified that "each housing unit seem[ed] to have a different inmate system" but it appeared to him that two house was "where the roughnecks and big people go" and he believed he was placed there *"because [he] was big."*(emphasis added). Movant himself injected the "trouble house" issue into the trial through his response to a question that did not specifically or directly attempt to elicit the information he volunteered. Once Movant introduced the issue into the trial through his own testimony, the door was opened and the topic was ripe for further examination by the State. *See State v. Lingar,* 726 S.W.2d 728, 734–35 (Mo. banc 1987).

■ Additionally, considering the cumulative evidence of defendant's guilt, we find that the elicited testimony was not prejudicial to Movant's case and had no effect on the verdict. *See Frederick v. State,* 754 S.W.2d 934, 935–36 (Mo.App. 1988). We are unable to conclude that there is a reasonable probability that, but for trial counsel's failure to object to the "trouble house" line of questioning, the outcome of this case would be different. *See Stuckey,* 756 S.W.2d at 591. The motion court did not err in finding that Movant failed to show the prejudice or performance criteria by counsel's conduct.

*See Clark v. State,* 94 S.W.3d 455, 460 (Mo.App.2003). Point denied.

The motion court's denial of Movant's Rule 29.15 motion is affirmed.

PREWITT and GARRISON, JJ., concur.