**STATE of Missouri, Plaintiff–Respondent,**

v.

**Larry E. MAHONEY, Defendant–Appellant.**

**No. 26581.**

Missouri Court of Appeals,
Southern District,
Division One.

June 29, 2005.

Conservator of the Estate of Cheyenne Helms.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alison K. Brown, Assistant Attorney General, Jefferson City, for Respondent.

JAMES K. PREWITT, Judge.

Larry E. Mahoney ("Movant") was charged with two counts of forcible rape (§ 566.030, RSMo 2000), three counts of forcible sodomy (§ 566.060, RSMo 2000), and one count of the class B felony of kidnapping (§ 565.110, RSMo 2000). Following jury trial, Movant was convicted on all six counts and was sentenced to concurrent prison terms of thirty years on the rape and sodomy charges and, consecutive to the other counts, ten years' imprisonment on the felony kidnapping charge. This Court affirmed his convictions and sentences in *State v. Mahoney*, 70 S.W.3d 601 (Mo.App.2002).

On July 18, 2002, Movant filed a *pro se* motion under Rule 29.15. Counsel was appointed, and an amended motion for post-conviction relief was filed on October 21, 2002. An evidentiary hearing was held

on February 13, 2004. The motion court entered its findings and conclusions denying Movant's motion on August 27, 2004. Movant appeals.

Movant claims that he received ineffective assistance of counsel in that his trial counsel failed to call Mark Sears as a witness and failed to cross-examine the victim regarding her description of Movant's tattoos and her claim that Movant was circumcised. Under his first point, Movant asserts that Sears' testimony would have contradicted the state's theory and supported his defense, and had Sears been called and the jury heard Sears' testimony, there is a reasonable probability that the outcome of Movant's trial would have been different.

On review of a ruling on a motion for post-conviction relief, this court is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(k). Findings and conclusions are "clearly erroneous" only if, after a review of the entire record, we are left with a definite and firm impression that a mistake has been made. *State v. Smith*, 949 S.W.2d 901, 906 (Mo.App.1997).

To prevail on his claim, Movant must establish that counsel failed to exercise the customary skill and diligence that a reasonably-competent attorney would exercise under similar circumstances and that he was prejudiced by such failure. *Barnum v. State*, 52 S.W.3d 604, 607 (Mo.App.2001). "Prejudice exists only where trial counsel's acts or failures to act are outcome determinative." *Id.* (quoting *State v. Harris*, 870 S.W.2d 798, 814 (Mo.banc 1994)). Movant must demonstrate that there is a reasonable probability that the outcome of the trial would have been different had counsel not erred. *Id.* Movant must prove his claims by a preponderance of the evidence. Rule 29.15(i).

The victim testified that when she met Movant and his step-son, Steven Willard,

at a Hardee's restaurant in the early morning hours of April 24, 1999, Movant discharged a handgun from a car window into the air. The victim alleged that Movant later held the gun on her as he ordered her to strip and held it to her neck as he forced her to perform oral sex.

Mark Sears is a Springfield police officer who was working at the Hardee's restaurant during the hours that victim and Willard testified the gun was discharged in close proximity to the restaurant. Movant claimed that Sears was willing and available to testify that he did not hear the discharge of a weapon on the morning in question. Sears testified at Movant's evidentiary hearing that he would have testified that he did not hear a weapon discharged at the time alleged. On appeal, Movant contends that Sears' testimony would have contradicted the testimony of "the state's main witnesses," challenged their credibility, and "would have likely resulted in the jury finding a reasonable doubt and acquitting [Movant]." [AB 20–21]

On cross-examination at Movant's evidentiary hearing, Sears testified that typically at that time of morning, there would be "between [fifty] and a hundred people" inside the restaurant. When asked whether it would be "a pretty noisy, rowdy crowd[,]" Sears responded, "Extremely." Sears testified that if there was gunfire in the vicinity of the restaurant, it was possible that he might not have heard the shot. [Tr. 11–12]

Springfield police officer Robert Pitts also testified at Movant's evidentiary hearing and was asked to describe the typical activity in and around the Hardee's restaurant at two o'clock a.m. on a weekend morning. Pitts stated: "[S]ometimes there are up to 150 to 200 people in and around that Hardee's, a lot of loud noise. Certainly if you're inside the restaurant, a

large crowd, and then the large crowd outside, there's a chance that you wouldn't have heard the gunshot." [Tr. 17]

■ Movant's trial counsel testified at the evidentiary hearing that it would have been inconsistent with his trial strategy to call Sears to testify at trial, because he did not want to emphasize the use of a gun on a thirteen-year-old girl. Counsel stated that he did not want to "talk about the gun or any part of her story as much as [he] could in the trial and really focused on the jury's attention on the lack of corroborating evidence, ... which was our primary point of our defense." [Tr. 66]

The motion court denied relief on Movant's contention that that counsel's failure to call Officer Sears to testify was prejudicial, finding, in part, that "[t]he actual likelihood that a gunshot would be heard by someone inside the business at that time was minimal. Officer Sears' testimony would not have assisted the defense and Movant suffered no prejudice." [LF 28]

■ We find no error in the motion court's findings and conclusions on this point. Movant has failed to demonstrate that he was prejudiced. The selection of witnesses and the introduction of evidence are questions of trial strategy, and counsel's decision not to call a witness, as a matter of trial strategy, is virtually unchallengeable. *Leisure v. State*, 828 S.W.2d 872, 875 (Mo.1992). "Where trial counsel decides as a matter of trial strategy to pursue one evidentiary course to the exclusion of another, trial counsel's informed, strategic decisions not to offer certain evidence is not ineffective assistance of counsel." *State v. Simmons*, 944 S.W.2d 165, 181 (Mo.banc 1997). Point I is denied.

■ Movant's second point asserts that the motion court erred in denying his Rule 29.15 motion alleging ineffective assistance of counsel, in that counsel failed to question the victim regarding previous statements inaccurately describing tattoos on Movant's body and inaccurately stating that Movant was circumcised. Movant contends that he is not circumcised and does not have the tattoos described by the victim, and that a reasonably-competent attorney would have brought such errors to the jury's attention. Movant alleges that counsel's failure to elicit this testimony at trial clearly prejudiced him "in that such testimony would have affected the jury's assessment of [victim's] testimony and would have established [victim's] allegations against [Movant] as a fabrication." [AB 23]

At Movant's criminal trial, the victim was not questioned regarding Movant's tattoos or whether he was circumcised. Prior to then, she was interviewed by Officer Pitts, who "was the lead follow-up investigator." [Tr. 14] Pitts testified at Movant's evidentiary hearing, however he was not questioned regarding the victim's allegedly inaccurate descriptions. Pitts authored a "Criminal Case Narrative," marked and admitted as Plaintiff's Exhibit 3, wherein he states that the victim described the tattoos to another officer, Zanetta Gann: Movant "had half of an eagle tattoo on his upper chest, left area. Had 'Larry' in cursive on his right shoulder, had a woman Indian head on his upper chest, right area and an unknown tattoo on the back of his right hand." [Plaintiff's Ex. 3, p. 2]

At the preliminary hearing, the victim described tattoos on Movant: "[H]e has Larry in cursive on his right um upper arm, ... he had an eagle on his chest on one side and I think a head of the lady Indian on the other side." [Plaintiff's Exhibit 4, p. 25]

Movant displayed his tattoos at the evidentiary hearing, and they were photographed. Movant testified that he had two tombstones tattooed on his chest, a rose

with two names on his left forearm, "Babe" on the back of his right hand, an eagle on his right upper arm, and "Larry" across his left shoulder. [Tr. 50–51].

At Movant's evidentiary hearing, when trial counsel was questioned regarding the victim's inaccurate descriptions of the tattoos, he stated: "To me this was a nonissue [sic]." Counsel testified that he did not want the discrepancy in the description of Movant's tattoos "to be gone into" because:

> [Victim] was describing an occurrence that didn't just last a few minutes or so. She was describing an occurrence that lasted over a period of time and moved from location to location. She was describing having a gun put to her head, forced to perform fallatio on [Movant], ... threats of violence, really emotionally riveting story, aside from the fact that there was little DNA evidence to corroborate it.
>
> With [Movant's] tattoos, one could imagine that a 13–year–old girl might not accurately recall just exactly what tattoo or what it was looking like in the dark as she's being repeatedly raped and sodomized at gunpoint in the course of the evening.
>
> One thing that she might recall was that there were, in fact, tattoos on [Movant's] body. And I recall [Movant] showing me his tattoos and he was describing what his tattoos were and how they were different from what [the victim] was saying. To me this was a nonissue [sic]. It was an issue really I would not want to have a rebuttal from the prosecutor simply because of what I just said. [Tr. 79]

On this issue, the motion court found:

> Movant testified at the evidentiary hearing that he did not have an Indian head on his chest, as victim claimed, but rather a set of two tombstones. An eagle tattoo which victim claimed was on

his chest, was in fact on his right arm. . . . As the photographs indicate, the tombstone tattoo on the right side of his chest could easily have been perceived as a head by someone unfamiliar with its precise nature. Had the jury seen the tattoos and heard the victim's testimony regarding them, it could have reinforced, not contradicted, the witness' credibility. [LF 32]

In her testimony at the preliminary hearing, the victim also stated that Movant was circumcised, which Movant denies. She was later asked whether she knew "exactly what it means for a guy to be circumcised[,]" and she again responded in the affirmative, stating, "[I]t just means that the extra skin was removed." [Tr. 38, 39]

At the evidentiary hearing, trial counsel addressed the issue of the victim's inaccurate claim that Movant was circumcised. Counsel testified:

> [T]he issue of circumcision was discussed a great deal. If a man's penis is erect and he's uncircumcised, I'm sure the prosecutor would be capable of making an argument that the head ... of the penis would be revealed and I'm sure could be capable of making an argument that a 13–year–old girl would probably not know the difference. And that's certainly not the kind of argument, because it relates to chastity, that I would want to have entered into this case. [Tr. 78]

The motion court found, in part:

> As to the victim's previous statements regarding circumcision, trial counsel testified that although [victim] knew the technical definition of circumcision, a jury could well believe that an inexperienced thirteen year old might not be able to correctly determine the state in an erect penis. It would obviously not be in his client's best interest to focus

the jury on that possibility. He also testified that as a matter of trial strategy he had elected not to go into the testimonial inconsistencies (which could be explained by her age and the circumstances of the offense) and focus instead on the lack of physical evidence to support her story. By focusing on the evidence rather than the victim herself, counsel avoided the possibility of offending jurors who might become protective of a child's vulnerability. In this case, trial counsel was at a further disadvantage because the child had testified that she was ill at the time of the trial.... It cannot be said that this was an unreasonable trial strategy. [LF 32]

Again, we find no error in the motion court's denial of Movant's claims regarding these issues. Subjects covered during cross-examination are generally matters of trial strategy and left to the judgment of counsel. *State v. Whitfield,* 939 S.W.2d 361, 370 (Mo.banc 1997). Movant has not demonstrated that the outcome would have been different had counsel brought the discrepancies to the attention of the jury. Point II is denied.

The motion court's denial of post-conviction relief is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.