**David Wayne FRY, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 28496.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 5, 2008.

Jessica M. Hathaway, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cory Lee Atkins, Asst. Atty. Gen., for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant David Wayne Fry ("Movant") appeals from the motion court's denial of his Amended Motion to Vacate, Set Aside, or Correct Sentence and Judgment brought pursuant to Rule 29.15.[1] Movant was convicted by a jury of robbery in the first degree, a violation of section 569.020; kidnapping, a violation of section 565.110; two counts of assault in the second degree, violations of section 565.060; and burglary in the first degree, a violation of section

---

1. All Rule references are to Missouri Court Rules (2007).

569.160.[2]  Following an evidentiary hearing on Movant's Rule 29.15 motion, the motion court denied relief.  Appellant now raises two points on appeal relating to his counsel's failure to impeach the testimony and credibility of a certain witness.  We affirm.

In the present matter the record reveals that on the evening of June 2, 2005, Jamie Linville ("Ms. Linville") and Paula LaBoone ("Ms. LaBoone") were preparing for bed at their home when they heard a loud knock at the door followed by the sound of glass breaking.  The women then saw two men come into the home through the back door.  Ms. Linville and Ms. LaBoone fled into a back bedroom, shut the door behind them, and blocked the door.  Ms. LaBoone testified at trial that she immediately recognized one of the men entering the home as Movant, a man with whom she was acquainted.  When the men forced their way into the room, Movant was displaying a knife, and the other man, Kevin Mallett ("Mr. Mallett"), was carrying a stick.  The men hit and beat the women and Movant threatened to cut their throats if they did not "shut up."  The men taped the women's wrists together and handcuffed the women to one another.

Thereafter, Movant and Mr. Mallett ransacked the home.  Then, they forced Ms. Linville and Ms. LaBoone into the bathroom, where they instructed them to remove their clothing.  At that time, Movant cut the women's shirts off with the knife.  He then used a stun gun to shock the women repeatedly.  Movant threatened Ms. Linville and Ms. LaBoone by telling them that "if [they] made a sound or a move to try to get out that he would cut [their] throats and burn the house down

with [them] in it."  The men then left, barricading the door behind them.

After thirty minutes, the women were able to free themselves and went to a neighbor's home to call the police.  The women were able to identify their attackers to police.  When the police tracked down Movant, he had some rings belonging to the women in his possession as well as a stun gun and some money.  Movant was arrested at that time.

At the close of all the evidence, the trial court found Movant guilty of the crimes listed above.  Movant was sentenced by the trial court as a prior and persistent offender to concurrent terms of eighteen years each for robbery in the first degree, kidnapping, and burglary in the first degree as well as fifteen years each for the two counts of assault in the second degree.[3]

Movant filed his *pro se* Rule 29.15 motion on October 19, 2006. He was appointed counsel and an Amended Motion to Vacate, Set Aside or Correct Sentence and Judgment was filed on January 25, 2007. A motion hearing on Movant's motion was held on March 19, 2007.  Following the hearing, the motion court denied Movant's request for Rule 29.15 postconviction relief.  This appeal by Movant followed.

Appellate review of a motion court's ruling on a Rule 29.15 motion for postconviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous.  Rule 29.15(k); *see Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000).  The findings of the motion court are presumptively valid.

2.  All statutory references are to RSMo 2000.

3.  Movant's underlying convictions were affirmed on direct appeal to this Court in *State v. Fry*, 197 S.W.3d 211 (Mo.App.2006).  In this opinion we shall recite only those facts necessary to discuss Movant's postconviction claims presently before this Court.

*Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made." *State v. Taylor,* 944 S.W.2d 925, 938 (Mo. banc 1997).

To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby. *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997); *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). To satisfy the performance prong, Movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Simmons,* 955 S.W.2d at 746. Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness. *Id.* If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and Movant's claim of ineffective assistance of counsel must fail. *Id.*

■ Movant's first point relied on asserts the motion court erred in finding he received effective assistance of counsel in that his counsel "failed to impeach [Ms.] Linville with a number of prior inconsistent statements she made under oath." He maintains such an error by counsel prejudiced the outcome of his trial and

without such an error "there is a reasonable likelihood the outcome of trial would have been different."

Prior to trial, Movant's trial attorney, Steve Hardin ("Defense Counsel"), obtained a copy of Ms. Linville's testimony from the trial of Movant's cohort, Mr. Mallett, and a copy of a deposition given by Ms. Linville prior to the trial of Mr. Mallett. Further, Defense Counsel personally deposed Ms. Linville prior to Movant's trial. Movant maintains there were seven inconsistencies between Ms. Linville's trial testimony in Movant's case and her previous statements. First, he maintains that at trial Ms. Linville reported Movant forced her to "get on the floor of the closet;" however, at Mr. Mallett's trial and in her deposition in that proceeding, she testified she was forced to lie in the bedroom floor "in front of the closet." Second, he asserts that at his trial Ms. Linville testified Movant " 'found' her stun gun in the bedroom" [4] and she testified at Mr. Mallett's trial and in her deposition that Movant "found her stun gun in the living room." Third, he notes that at his trial Ms. Linville testified that only Ms. LaBoone was cut by Movant; yet, she testified in her deposition for Mr. Mallett's trial that they both received cuts and she also testified at Mr. Mallett's trial that she received cuts "on her arms and legs." [5] Fourth, Movant asserts that at his trial Ms. Linville testified the attack by Movant occurred when they "had just finished our showers," but she testified in her deposition for Mr. Mallett's case that she and Ms. LaBoone had taken a bath together. Fifth, Movant maintains Ms. Linville testified at his trial that Movant taped their

---

**4.** We note that in the trial testimony cited by Movant Ms. Linville did not, in fact, testify as to where Movant found the stun gun.

**5.** We note that in the trial testimony cited by Movant Ms. Linville only testified that she was cut on the arm as opposed to being cut "on her arms and legs" as stated by Movant in his brief.

mouths after she spoke to him and called him by name as opposed to her testimony at her deposition in Mr. Mallett's case that their mouths were taped "the very first thing. . . ." Lastly, Movant points out that at his trial Ms. Linville testified Movant found the handcuffs in her bedroom, but she testified at the deposition in Mr. Mallett's case that she did not know where the handcuffs came from.

At the evidentiary hearing in this matter, Defense Counsel testified he had reviewed all of Ms. Linville's prior statements before Movant's trial and he had even attended Mr. Mallett's trial. He stated he obtained Ms. Linville's prior testimony "[t]o find any inconsistent statements, any changes in stories. Basically, to find anything [he] could use at all." He stated he did not remember actually trying to impeach Ms. Linville with any of the above statements and that if it was not in the transcript he assumed he had not done so. He also related he knew going into the trial that he "very much wanted to impeach this witness," but he did not "remember any specific instances" in which he actually impeached Ms. Linville. He stated he did not recall any trial strategies relating to this lack of impeachment.

Regarding the possible inconsistency in Ms. Linville's testimony about where Movant found the stun gun, Defense Counsel stated "[i]t didn't really strike [him] as something that [he] needed to [delve] into." Defense Counsel testified that sometimes "if [an attorney] appears[s] to be nitpicking at something, that [it can] create [jury] sympathy for a witness as opposed to causing their credibility to be actually impeached." He related at trial he "was really trying to concentrate on the lack of blood throughout the house" and he was not sure that pointing out minor inconsistencies in Ms. Linville's testimony would have had an impact on the trial. He

also related he could not recall if he curtailed his cross-examination of Ms. Linville because he felt he "was losing the jury," but he knew that at trial he "was much more interested in pointing out the lack of physical evidence . . ." rather than poking holes in her testimony. He felt that Ms. Linville made a credible witness and that the jury would believe her in light of the "fairly significant evidence" against Movant.

"The decision whether or not to impeach a witness with a prior inconsistent statement is a matter of trial strategy and cannot be the basis for finding ineffective assistance of counsel." *Reynolds v. State,* 87 S.W.3d 381, 385 (Mo.App.2002). The mere failure to impeach a witness does not entitle a movant to postconviction relief. *Kuehne v. State,* 107 S.W.3d 285, 293 (Mo. App.2003). " 'The movant has the burden of establishing that the impeachment would have provided the movant with a defense or would have changed the outcome of the trial.' " *Id.* (quoting *Barnum v. State,* 52 S.W.3d 604, 608 (Mo.App.2001)). "The movant must also 'overcome the presumption that counsel's decision not to impeach was a matter of trial strategy.' " *Id.* (quoting *Barnum,* 52 S.W.3d at 608).

"Trial counsel is afforded wide latitude as to matters of trial strategy." *Hightower v. State,* 43 S.W.3d 472, 476 (Mo.App. 2001). " 'A court will not find ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy.' " *Johnson v. State,* 125 S.W.3d 872, 876 (Mo.App.2003) (quoting *State v. Hamilton,* 892 S.W.2d 774, 784 (Mo.App. 1995)). Indeed, there is a strong presumption that counsel provided competent assistance. *Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002). Counsel has wide latitude in conducting a defense and may use his best judgment in matters of trial

strategy. *Maberry v. State,* 137 S.W.3d 543, 548 (Mo.App.2004). However, for trial strategy to be the basis for denying postconviction relief the strategy must be reasonable. *State v. Ervin,* 835 S.W.2d 905, 930 (Mo. banc 1992). " 'Reasonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.' " *Worthington v. State,* 166 S.W.3d 566, 573 (Mo. banc 2005) (quoting *Cole v. State,* 152 S.W.3d 267, 270 (Mo. banc 2004)).

Movant maintains that had Defense Counsel impeached Ms. Linville "the jury would have questioned the disparity between her prior testimony and that at trial" and would have "found the testimony ... incredible...." To prevail on his claim, Movant is required first to show that Defense Counsel's failure to present the impeachment evidence was unreasonable and outside the realm of trial strategy. *Reynolds,* 87 S.W.3d at 385. Movant has not met this burden.

■ The choice of impeaching a witness with a prior inconsistent statement is a matter of trial strategy, *Reynolds,* 87 S.W.3d at 385, and based on the foregoing it is clear Movant has failed to prove Defense Counsel's actions were something other than trial strategy. Movant has not proven his counsel was ineffective for choosing not to impeach Ms. Linville with minor inconsistencies in her prior testimony and her testimony at trial. The findings of fact and conclusions of law of the motion court are not erroneous. Point denied.

■ In his second point of motion court error Movant asserts the motion court erred in finding he received effective assistance of counsel because his counsel "failed to impeach [Ms.] Linville's credibility with the fact of a prior stealing conviction." He maintains he was prejudiced by counsel's error and "but for trial counsel's omission, there is a reasonable likelihood the outcome of trial would have been different."

At Mr. Mallett's trial, Ms. Linville testified that "[w]hen [she] was 17, [she] was convicted of a misdemeanor ... [f]or shoplifting." The issue of Ms. Linville's prior conviction was not raised by Defense Counsel at Movant's trial.

At the evidentiary hearing on Movant's Rule 29.15 motion, Defense Counsel testified he did not remember why he did not impeach Ms. Linville with her prior conviction, but "[i]t's entirely possible that the jury was becoming, in my opinion, somewhat upset ... like I was losing the jury." He stated he did not recall making a "conscious decision" not to use the prior conviction, but he did recall he felt Ms. Linville was a credible witness whom the jury would believe.

As previously related, the mere failure to impeach a witness does not entitle Movant to postconviction relief and he bears the burden of proving the impeachment would have changed the outcome of the trial or provided him with a defense. *Kuehne,* 107 S.W.3d at 293. Here, Movant maintains "no reasonable trial strategy could justify [Defense Counsel's] failure to impeach the credibility of [Ms.] Linville with the fact of her prior [shoplifting] conviction." We disagree. Defense Counsel testified he felt Ms. Linville "testified well" and "made good impressions" such that he felt the jury would find her to be a credible witness. He stated while he did not recall a specific trial strategy in relation to the prior conviction, he noted several times that he was "really trying to concentrate" on his theory of the case and that he might have changed his approach to cross-examination "to avoid angering the jury, annoying the jury, turning them off, so to speak."

There is a strong presumption that counsel provided competent assistance, *Deck,* 68 S.W.3d at 425, and Movant has failed to prove Defense Counsel's trial strategy was unreasonable. *See Worthington,* 166 S.W.3d at 573. The motion court did not err in denying Movant's Rule 29.15 motion and in finding Movant did not receive ineffective assistance of counsel. Point II is denied.

The findings of fact and conclusions of law of the motion court are affirmed.

LYNCH, C.J., and BURRELL, J., concur.