Donald Alan **BYRD**, Movant–Appellant,

v.

**STATE of Missouri, Respondent.**

**No. SD 30125.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 30, 2010.

---

720 

Jessica M. Hathaway, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, and Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

A Pemiscot County jury found Donald A. Byrd ("Movant") guilty of four counts of statutory sodomy in the first degree for sexually molesting his step-daughter ("Victim") between September 2002 and March 2005, beginning when Victim was eight years old. This court affirmed those convictions in an unpublished order and memorandum. *State v. Byrd,* No. 28417, slip op. (Mo.App.S.D. Nov. 4, 2008). After our mandate issued, Movant timely filed a *pro se* motion seeking post-conviction relief under Rule 29.15.[1] Appellate counsel was appointed and filed an amended motion on Movant's behalf.

That motion alleged Movant's trial counsel was ineffective for: 1) "failing to challenge Juror # 1, Dale Hall, for cause or peremptorily, or for failing to move for a mistrial after Mr. Hall revealed he knew Movant and his family in the middle of trial[;]" 2) failing to file a pre-trial motion seeking a "pretrial reliability hearing" to prove that the anticipated testimony of two "jailhouse informants" was "inherently unreliable, more prejudicial than probative, and [ ] should be excluded[;]" and 3) failing to impeach Victim's mother ("Mother") with testimony she had given during a previous "Section 491 hearing."[2]

After an evidentiary hearing, the motion court issued findings of fact and conclusions of law as required by Rule 29.15(j) and attached them to a "Judgment"[3] deny-

---

1. Unless otherwise indicated, all rule references are to Missouri Court Rules (2009).

2. We presume Movant is referring to section 491.075, which, at the time of Movant's criminal conduct, allowed pre-trial statements made by persons less than twelve years old to be admitted at trial as substantive evidence if certain conditions were met. Unless otherwise indicated, all statutory references are to RSMo 2000.

3. "An order sustaining or overruling a motion filed under the provisions of this Rule 29.15 shall be deemed a final judgment for purposes

ing Movant's request for relief. Movant now appeals that denial in three points relied on that mirror the allegations of his amended motion.

Finding no merit in any of Movant's claims, we affirm the motion court's denial of post-conviction relief.

## Standard of Review

The motion court's findings are presumed correct. *Zink v. State,* 278 S.W.3d 170, 175 (Mo. banc 2009). We will overturn them only if we find that either the findings of fact or conclusions of law are clearly erroneous. *Id.* This standard has been met if a review of the whole record leaves us with the "definite and firm impression that a mistake has been made." *Worthington v. State,* 166 S.W.3d 566, 572 (Mo. banc 2005).

To receive post-conviction relief based on a claim of ineffective assistance of counsel, Movant must prove by a preponderance of the evidence to the motion court that (1) his counsel failed to exercise the customary level of skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and (2) his counsel's failure to exercise such skill and diligence was actually prejudicial to his case. *Id.; see also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To satisfy the first prong, Movant must overcome the strong presumption that his counsel's performance was objectively reasonable and effective. *Worthington,* 166 S.W.3d at 573. Doing so requires Movant to point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006). Reasonable choices of trial

strategy cannot serve as the basis for a claim of ineffective assistance of counsel. *Zink,* 278 S.W.3d at 176.

"The second prong of *Strickland* requires a determination whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Deck v. State,* 68 S.W.3d 418, 429 (Mo. banc 2002) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). If Movant failed to satisfy either of the two prongs, we need not consider the other. *Wright v. State,* 125 S.W.3d 861, 866 (Mo. App. S.D.2003).

## Analysis

We will address Movant's points in turn, adding as necessary any additional relevant facts within the context of our analysis of the point to which they relate.

### *Counsel was not ineffective for failing to challenge juror Hall*

Movant's first point contends the motion court clearly erred in denying post-conviction relief because trial counsel was ineffective for "failing to move to strike juror Dale Hall for cause or ask for a mistrial after Mr. Hall disclosed he knew [Movant] because trial counsel had information that Mr. Hall knew [Movant] and had negative feelings about him, in that there was evidence that [Movant] told his attorney as much during trial and no reasonable attorney would leave a possibly biased juror on the panel to decide [Movant]'s guilt."

Under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of

of appeal by the movant or the state." Rule 29.15(k), Missouri Court Rules (2010).

the Missouri Constitution, a criminal defendant is entitled to a fair and impartial jury. To successfully claim counsel was ineffective for failing to strike a venireperson peremptorily or for cause, "the movant must show that a juror who was *actually biased* sat on the petit jury." *State v. Davis*, 963 S.W.2d 317, 330 (Mo.App. W.D. 1997) (emphasis added). "Where a venireperson's answer suggests a possibility of bias, that person is not qualified to serve as a juror unless, upon further questioning, he or she is rehabilitated by giving unequivocal assurances of impartiality. *State v. Stanley*, 124 S.W.3d 70, 77 (Mo. App. S.D.2004)." "The decision to strike a venireperson is generally a matter of trial strategy." *Boyd v. State*, 86 S.W.3d 153, 158 (Mo.App. E.D.2002).

After Victim and Mother had testified for the State at trial, juror Hall informed the trial court that Victim and her family used to live across the street from him in Hayti, Missouri. Hall told the court he had not recognized their names and had never interacted with them in any way. He told the judge that he believed he could still be a fair juror and was allowed to remain on the jury. Movant's counsel did not request that Hall be removed from the jury. When the trial had concluded, the trial court asked Movant if he was satisfied with his legal representation. Movant said that he was and did not complain that Hall had been a member of his jury.

At the motion hearing, Movant and his trial counsel, Darren Todd, presented conflicting testimony. Todd testified that Movant told him during *voir dire* that Hall may have been familiar with Movant and his family and might have been a neighbor at one time. Todd said Movant told him that this familiarity was "good" because

Hall "would realize that [Victim] and her family were somewhat untruthful." Todd thought it was strange that Hall failed to speak up during *voir dire* when asked if he knew any of the parties, but chose not to question him about it because Movant thought Hall would be a "good" juror. After Hall disclosed his knowledge of Victim's family during the trial and told the judge he could be fair, Todd said that he talked with Movant and they decided it was still in Movant's best interest for Hall to remain a juror.

Movant testified that Hall used to live across the road from him and Victim's family. Movant said he had not interacted with Hall, except for one negative incident where Movant alleged he had to call the police after he suspected that Hall's son had broken into his car and stolen some CDs. Movant testified that he told Todd about this negative incident during jury selection and that Todd responded that he would rather keep Hall on the jury. Todd testified that he had no recollection of Movant ever telling him about any dispute between Movant and Hall's son.

Movant argues that because Hall was biased against him, trial counsel acted unreasonably in failing to strike him from the jury. This claim is clearly refuted by the record. Hall brought the issue to the attention of the trial court. He stated that he did not know or interact with Movant and Victim's family in any way—he simply recognized them as former neighbors. After telling the court that he used to live across the street from them, Hall unequivocally assured the judge that it would not prevent him from being an impartial juror. Whether Hall did not recognize Movant during *voir dire*[4] or did not reveal it at that time, Movant recognized Hall and told

---

4. We presume that Mother and Victim would not have been present in the courtroom during voir dire and that Hall's first opportunity to observe them would have occurred when they entered the courtroom to testify.

Todd that his serving on the jury would be a "good" thing for Movant.

Movant's only suggestion of potential bias was his claim that he had called the police about his suspicion that Hall's son had stolen some of Movant's CDs. Although Movant testified that he told Todd about the incident and that Todd wanted to keep Hall on the panel anyway, the motion court was entitled to reject that testimony, especially in light of Todd's having no recollection of any such disclosure and Movant's failure to complain about Hall being a juror when asked about his counsel's performance at the conclusion of the trial.

▮▮▮▮ Because the motion court may believe or disbelieve any evidence, we defer to the motion court's determination of the credibility of Movant's testimony. *Watts v. State*, 248 S.W.3d 725, 732 (Mo. App. S.D.2008). Even if the motion court had found Movant's story credible, that testimony would have been insufficient to indicate that Hall was *actually biased* against Movant and thereby unfit to sit on the jury. "A possibility of prejudice is not sufficient to disqualify a juror: 'It must clearly appear from the evidence that the challenged venireperson was in fact prejudiced.'" *Pearson v. State*, 280 S.W.3d 640, 646 (Mo.App. W.D.2009) (quoting *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990)). No such evidence existed here. Movant's first point is denied.

*Counsel was not ineffective for failing to request a pretrial reliability hearing regarding informant testimony*

▮▮▮▮ In his second point, Movant claims "trial counsel was ineffective for failing to move before trial to exclude evidence from [ ] two jailhouse informants, because courts have recognized the inherent unreliability of jailhouse informants, and the interests of justice and a fair trial

required a pretrial reliability hearing to permit the trial court to ascertain the reliability and probative value of [ ] jailhouse testimony."

The referenced witnesses were Darrell Kuehl and David Holifield—individuals with whom Movant shared a pod at the Pemiscot County Jail for approximately two-and-a-half months while awaiting trial. The two men were friends and were awaiting trial on charges that they had jointly engaged in stealing. Both testified during Movant's trial that they met Movant at the jail, where Movant admitted to each of them that he had sexually abused Victim. Both men wrote official statements outlining the details of the charged acts, as revealed by Movant, including the number of times the abuse had occurred and the various towns in which it had taken place. The details of the two statements were strikingly similar.

At the motion hearing, Todd testified that his general strategy in dealing with jailhouse informants involved asking them about any deals they had received from the State in exchange for their cooperation, then arguing to the jury that this deal-making undermined the credibility of their testimony. But Todd did not actually carry out that strategy in Movant's case; he did not cross-examine the witnesses about any deals they might have made with the State. Todd's explanation at the motion hearing was that prosecutors in Pemiscot County usually do not offer any such deals to jailhouse witnesses until after they have testified. Todd testified that although he did not speak with either informant before trial, he did review their written statements and did not consider them to be reliable. Movant testified at the motion hearing that he never talked to Kuehl and Holifield about his case.

It should be noted that Movant's claim on appeal is not that Todd was ineffective for failing to cross-examine Kuehl and Holifield about any deals they might have received from the State in exchange for their testimony. Instead, Movant's claim is that the testimony of "jailhouse informants" is inherently unreliable and prejudicial and that Todd was ineffective for failing to move for a "required" pretrial hearing to test the reliability of their testimony. The motion court correctly found this claim to have no merit.

 The authority Movant cites for the proposition that pre-trial hearings should be held to determine the reliability of incarcerated informant witnesses is from foreign jurisdictions. Missouri law requires no such procedure.[5] Counsel is not ineffective for failing to request a hearing he has no right to receive. *See Harp v. State*, 209 S.W.3d 560, 564 (Mo.App. S.D.2007) ("Trial counsel is not ineffective for failing to do a meaningless act"). Moreover, even if such a procedure existed in Missouri, Movant failed to demonstrate a reasonable probability that the trial court would have excluded the testimony if such a hearing had been held—much less a reasonable probability that the outcome of the trial would have been different without it. Without such proof, Movant could not satisfy the prejudice prong of the *Strickland* test. *Deck*, 68 S.W.3d at 429. Movant's second point fails.

*Counsel was not ineffective for failing to impeach Victim's mother with her prior inconsistent statement*

 Movant's final point claims Todd was "ineffective for not impeaching [Mother] with a prior inconsistent statement that [Victim] had said she would do 'whatever it takes' to get [Movant] out of the house several weeks before she disclosed the abuse." Under section 491.074, "a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement."

 Generally, counsel's decision "not to impeach a witness with a prior inconsistent statement is a matter of trial strategy and cannot be the basis for finding ineffective assistance of counsel." *Reynolds v. State*, 87 S.W.3d 381, 385 (Mo. App. S.D.2002); *see also State v. Mahoney*, 165 S.W.3d 563, 568 (Mo.App. S.D. 2005) ("Subjects covered during cross-examination are generally matters of trial strategy and left to the judgment of counsel"). "The mere failure to impeach a witness does not entitle a movant to post-conviction relief." *Fry v. State*, 244 S.W.3d 284, 287 (Mo.App. S.D.2008). To prevail, Movant must show that counsel's "failure to present the impeachment evidence was unreasonable and outside the realm of trial strategy." *Id.* at 288.

The following facts are relevant to this claim. On April 27, 2006, the trial court held a pretrial "Section 491 hearing" to determine whether the State would be allowed to present as substantive evidence at Movant's trial various out-of-court statements Victim had made. *See* section 491.075. During the hearing, Mother testified that Victim first told her about the abuse on March 9, 2005, while they were traveling in the car to pick Movant up from work. Mother testified that about three months earlier, Victim had told her

---

5. Any such procedure would also be contrary to our existing law, which reserves solely to the jury all determinations of witness credibility. *See, e.g., State v. Holt*, 592 S.W.2d 759, 774 (Mo. banc 1980).

that Victim would "do whatever it takes" to get Movant out of the house.

At Movant's trial, when Todd asked Mother on cross-examination if Victim had ever indicated to her that Victim wanted Movant "out of the house," Mother responded, "No, she never said nothing [sic] like that." Trial counsel did not attempt to impeach Mother with her prior testimony that she had. At the motion hearing, Todd indicated that he consciously chose not to do so because Mother was "crying uncontrollably" at that point, and it appeared to him that every one of the jurors was also crying. Todd testified that "beating up on this lady" by impeaching her at that point would have been "less helpful than going to the next stage, which was credibility."

■ A strategic choice to either limit or not impeach a witness at all for fear that doing so would alienate the jury or create sympathy for the State's witnesses is a reasonable one. *See State v. Chambers*, 891 S.W.2d 93, 110 (Mo. banc 1994) ("There is no evidence that trial counsel could have exposed additional prior inconsistent statements without alienating the jury"); *Fry*, 244 S.W.3d at 287–88 (denying the movant's ineffective assistance of counsel claim after counsel failed to impeach a witness's credulity with a prior stealing conviction on the basis that such impeachment might anger or upset the jury).[6] The motion court found that Todd's decision not to impeach Mother with her prior inconsistent testimony was reasonable trial strategy under those circumstances and that Movant had failed to prove that there was a reasonable probability the outcome of Movant's trial would have been different if Todd had done so. This finding was not clearly erroneous.

The motion court also correctly found that Movant had failed to satisfy the prejudice prong of the *Strickland* test by failing to demonstrate a reasonable probability that the outcome of Movant's trial would have been different if Mother had been impeached with her prior inconsistent statement. *Deck*, 68 S.W.3d at 429. From Todd's other cross-examination of both Victim and Mother, the jury was already well-aware that Movant and Victim did not get along well. To the extent that Movant's trial strategy involved attacking Victim's credibility by showing that she was biased against Movant, that objective had already been accomplished. Movant's third point is also denied, and the motion court's denial of post-conviction relief is affirmed.

BARNEY, P.J., and LYNCH, J., Concurs.

---

6. There was also a risk that the jury would interpret Mother's prior testimony as showing Victim was desperate to get the source of her ongoing sexual abuse out of the house, not that Victim did not like Movant because he disciplined her.