**UNITED STATES of America**

v.

**Ciro GARGANO.**

**No. 83 CR 854.**

United States District Court,
N.D. Illinois, E.D.

Dec. 12, 1983.

Andrea Davis, Michele E. Smith, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Richard F. Walsh, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

The defendant, Ciro Gargano, is charged with unlawful possession of a firearm in violation of 18 U.S.C. app. § 1202(a)(1) (Supp.1983). Before the Court is defendant's motion to suppress evidence at trial. Specifically, defendant seeks the suppression of an "AR–15 rifle" which police officers found in defendant's garage. The Court, having heard testimony on December 9, 1983, and having considered exhibits and memoranda submitted by the parties, does hereby enter the following findings

pursuant to Rule 12(e) of the Federal Rules of Criminal Procedure.[1]

*Facts*

Defendant is the owner of a building located at 1806 North Sheridan Road, North Chicago, Illinois. The front of the building consists of a store and the back consists of a garage. Defendant and his wife reside at 1810 North Sheridan Road, North Chicago, Illinois.

On October 17, 1982, at approximately 10:44 p.m., the North Chicago Police Department received a report that a possible burglary was in progress at the defendant's 1806 North Sheridan Road building. Upon arriving at the scene, Officer Wade observed a man whom he knew as "Rivera" inside the building. Rivera motioned for the officers to come to the back of the building. When Officers Wade and Warner reached the back of the building, they observed Rivera flee from the scene on foot. Officer Wade pursued Rivera for approximately one block and, after a struggle, took Rivera into custody.

Officer Wade then called for assistance and within minutes several North Chicago police officers were at the scene of the burglary. Officer Wade returned to the defendant's garage and observed that the garage door was broken open and a car parked inside the garage was extensively damaged. The officers then entered the defendant's garage for the purpose of locating potential accomplices to the burglary. Once inside defendant's garage, the police officers observed an "AR–15 rifle" laying on the floor in plain view.

While the police officers were searching the building for potential accomplices, the defendant's wife arrived at the garage. She informed the police officers that the building was owned by her husband. The police officers asked Mrs. Gargano to leave the premises stating that they believed

---

1. Defendant's motion to suppress was originally denied by this Court on November 18, 1983. On November 22, 1983, defendant presented new factual allegations and requested that this Court reconsider its November 18, 1983 order. That motion was granted on the basis of the factual issues raised in defendant's motion for reconsideration. The matter was then set for a hearing on defendant's motion to suppress for December 9, 1983.

there was a suspect in the building. Before Mrs. Gargano left the premises, she observed the rifle laying on the garage floor. When she attempted to remove the rifle from the garage, a police officer stated that she could not remove the rifle because it would be needed as evidence.

The officers remained at the defendant's garage for approximately one hour photographing the scene, dusting for fingerprints and gathering evidence. Among the items of evidence gathered and sent to the police station for analysis was the "AR–15 rifle". The police officers did not obtain a search warrant before entering the defendant's garage or before seizing the rifle.

### Discussion

Defendant makes two arguments in support of his motion. First, that the police officer's initial warrantless entry into the defendant's garage was illegal. Second, even assuming that the officer's entry into the garage was legal, the seizure of the rifle was illegal because the rifle was neither contraband nor evidence to be used against the burglar. The government contends that (1) the police officer legally entered defendant's garage in "hot pursuit" of potential accomplices of the burglar and (2) once the police officer was legally on the premises, he properly seized the rifle because it was in "plain view" and could be used as evidence against the burglar.

The defendant argues that *United States v. Pichany*, 687 F.2d 204 (7th Cir.1982), warrants suppression of the rifle. *Pichany*, however, is not applicable to this case. In *Pichany*, a police officer received a phone call from a person reporting that his warehouse had been burglarized the previous night. The police officer agreed to meet the warehouse owner at the scene of the burglary. The police officer arrived at the scene thirty minutes early, before the owner of the warehouse arrived. After finding the burglary victim's building locked, the police officers entered an adjoining building which was unlocked. Once inside, the police officers discovered farm tractors that had been stolen and later

charged the lessee of the building with theft of the tractors.

The Seventh Circuit affirmed the district court's suppression of the evidence found in the warehouse. The government did not argue that any exigent circumstances existed but rather that the police had authority to search an unlocked warehouse under the "community caretaking function" articulated in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

Unlike *Pichany*, the government in this case has not even suggested that the search of the defendant's garage was justified under the "community caretaking function" doctrine. Instead, the government argues that the officer's entry into the defendant's garage was justified because of exigent circumstances (i.e. entering the garage moments after the burglary occurred). In *Pichany*, no exigent circumstances existed.

■ The government relies upon *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and argues that the officer's entry into defendant's garage was justified because it was made in "hot pursuit" of potential accomplices of the burglar. Generally, police officers have authority to make a cursory search of premises without a warrant if they reasonably believe accomplices to a crime may be hiding on the premises. *United States v. Weber*, 518 F.2d 987, 990 (8th Cir.1975); *United States v. Estese*, 479 F.2d 1273 (6th Cir.1973); *Guerara v. Superior Court*, 7 Col.App.3d 531 (1970).

■ In this case, the government has met its burden of showing that the North Chicago police officers were justified in entering defendant's garage for the purpose of searching for potential accomplices to the burglary. The burglary occurred at night; the building had been forcibly entered; the officers could not determine from the outside whether persons were hiding inside the building; and most importantly, the police officers arrived while the burglary *was in progress*. Under these circumstances, the police officers reason-

ably believed that potential accomplices to the burglar could. have been hiding in the garage. *See also Carter v. State*, 405 So.2d 957 (Ala.App.1981); *State ex rel. Zander v. District Court*, 180 Mont. 548, 591 P.2d 656 (1979).

■ Having determined that the North Chicago police officers were justified in entering the defendant's garage, the Court further finds that the seizure of the "AR–15 rifle" was also justified. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), holds that once police officers are legally on the premises, they may seize "mere evidence" so long as there is a sufficient nexus between the item seized and the criminal behavior being investigated.

Both parties agree that the rifle was in "plain view" when the officers first observed it. Defendant, however, argues that the police officers' motive in seizing the rifle was to use it as evidence against the defendant and not the burglar. The Court, however, finds the testimony of Officer Wade highly credible and further finds that on October 17, 1983, the police officers reasonably seized the rifle for the purpose of gathering evidence against the burglar. Mrs. Gargano's testimony, on the other hand, which suggests that the officers seized the rifle for the purpose of convicting the defendant, is not credible.

The Court, therefore, finds that: (1) North Chicago police officers were justified in entering the defendant's garage without a search warrant because of exigent circumstances; (2) once inside the garage, the police officers inadvertently discovered the "AR–15 rifle" in plain view; and (3) having observed the rifle, it became immediately apparent to the police officers that seizure of the rifle was necessary to aid in the conviction of the burglar.

### Conclusion

For the reasons stated herein, defendant's motion to suppress is denied.

IT IS SO ORDERED.