**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert SIMMONS, Defendant–Appellant.**

No. 25941.

Missouri Court of Appeals, Southern District, Division Two.

March 31, 2005.

Amy M. Bartholow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Office of Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

A jury found Robert Simmons ("Defendant") guilty of nine felony charges related to illicit drugs. These charges arose out of three separate instances of criminal conduct with each one occurring months apart from the others. The convictions encompassed three counts of manufacturing methamphetamine (§ 195.211), three counts of possession of drug paraphernalia with the intent to manufacture (§ 195.233), two counts of possessing pseudoephedrine with the intent to manufacture (§ 195.246), and one count of possession of ether with the intent to manufacture (§ 195.420).[1]

Defendant's first point asserts reversible error occurred when the trial court overruled his motion to suppress physical evidence seized in the first case and then admitted the evidence at trial over his objection. His second point maintains reversible error occurred when the trial court overruled his motion to sever the cases. We find merit in the first point, but not the second; accordingly, we reverse and remand in part and affirm in part.

## FACTS OF NOVEMBER 2001 CASE

On November 11, 2001, the police found a methamphetamine lab and other contraband in Defendant's building located at 1835 East St. Louis Street, Springfield, Missouri. This discovery was made under the following circumstances.

At approximately 8:00 a.m., Springfield policeman Joe Motte ("Motte") was directed via police dispatch to Defendant's building. Evidence regarding this dispatch and the reasons for Motte entering the building once he arrived are as follows.

At the suppression hearing, Motte testified he was sent to the building "to check on the well-being of a person." He explained that a "check on-the-well-being

call" was one where "we want to find out if somebody is okay." He remembered nothing about the dispatch directive, other than the address. Motte stated there "was probably more information[,][b]ut I can't remember exactly what she [the dispatcher] said." Admittedly, the dispatcher never gave Motte the specific name of a person "who was hurt, or anything like that."

"Q. [To Motte] And you would remember, I hope, if the dispatch told you there was a person inside that had needed help or there was some specific information like that?

"A. I would remember, but I don't think—

"Q. You don't think you received anything like that?

"A. (shakes head)."

Upon arriving, Motte found no one "in that location[ ]" or "around the building." However, he saw "the front door [was] shattered[ ]" and the east end garage door "was partly opened." In other testimony, Motte claimed the glass front door was "spider webbed" and "[t]here might have been a hole in it also." At yet another point in his testimony, Motte described the garage door as being open to a height of three feet.

Based on the foregoing, Motte decided to enter Defendant's building. He based his decision on the directive he received to check on the well-being of a person at that site and his discovery of the open garage door and shattered front glass once he arrived. At the suppression hearing, he testified: "When I got there I found out that it had been vandalized, and I wanted to make sure there was nobody hurt inside." At trial, this was his testimony:

"Q. [TO MOTTE]: With your training, your experience, this looks like consistent with something's up; what do you do?

1. All statutory references are to RSMo (2000), unless otherwise stated.

"A. I wanted to enter the building to check the well-being of anybody who might have been inside.

"Q. If it's just a burglary, why are you concerned about someone's well-being inside?

"A. Because the homeowners, or whoever owned the building or might have occupied it at the time, of the burglary could have gotten hurt."

Once Motte and another officer entered Defendant's building, they found (in plain view) numerous items that led to Defendant being charged with multiple crimes, including Counts I, II, and IV. Defendant's convictions on these counts are the subject of his first point on appeal.

### FACTS OF MARCH 2002 CASE

On March 2, 2002, policeman Travis Wilson ("Wilson") drove to a business site at 1821 East St. Louis, Springfield, Missouri. He was dispatched to that address to investigate a reported act of vandalism there. The victim also reported seeing footprints in the snow leading from his building to the one next door, which happened to be Defendant's premises.

Once Wilson's investigation led him toward Defendant's building, he viewed several cars parked there. He also saw two people exit the building and noted a "strong chemical odor" emanating from the building. He associated the smell with methamphetamine manufacturing.

One of the people who exited the building was Defendant's son. After some delay, the son allowed Wilson entry. Once inside, Wilson saw several people, but Defendant was not among them. When Defendant finally appeared, Wilson called for back up and conducted a protective search. In doing so, he witnessed numerous items normally used in the manufacture of methamphetamine.

All persons present were then arrested. When Wilson searched Defendant, he found methamphetamine in his pocket. Defendant then explained he "had been cooking meth at the business ... that morning." This incident led to Defendant being charged and convicted by the jury of four illicit drug-related charges.

### FACTS OF JULY 2002 CASE

On July 11, 2002, trooper Todd Vermillion ("Vermillion") was dispatched to the parking lot of a convenience store to investigate a "suspicious" vehicle. Upon arrival, Vermillion found a pick-up truck with front-end damage and its two occupants asleep. As he looked in the truck window, Vermillion viewed what appeared to be a bag of marijuana and a package of rolling papers on the truck's console and an acetylene torch on the dash. He then learned the vehicle's occupants were Defendant and his son. He arrested Defendant, read him the Miranda warnings, and searched him. The search revealed Defendant possessed a sandwich bag on his person containing a white powdery substance and coffee filters. Other items found in open view in the back of the pickup truck and on the truck's floorboard led Vermilion to ask Defendant about a possible methamphetamine lab in the back of the truck. Defendant answered it was only "lab trash." Later, Defendant told Vermillion he needed methamphetamine to survive and that he would bond out and be cooking again that night.

This incident led to Defendant being charged with two of the drug-related offenses for which he was found guilty by the jury. This appeal followed.

### DISCUSSION AND DECISION

*Point I: Unlawful Search Or Exigent Circumstances: November 2001 Case*

 Defendant's first point maintains reversible error was committed when the

trial court overruled his motion to suppress and admitted into evidence items seized from his building on November 11, 2001. He insists that officer Motte's entry into his building without a warrant was "unlawful since there was no probable cause and no exigent circumstances to justify the intrusion." [2]

Replying to this argument, the State points to four facts that it claims warrant a finding of exigent circumstances: (1) officer Motte was dispatched to check on the well-being of a person, (2) he found a shattered door glass at the building in question, (3) he found a partially opened garage door, and (4) no one answered when Motte identified himself as a police officer. From this, the State argues that it is reasonable to infer a burglary occurred and some person might have been injured inside the building; consequently (according to the State), the trial court did not commit reversible error in its rulings.[3]

The Fourth Amendment of the U.S. Constitution and Article I, Section 15 of the Missouri Constitution guarantee the right of citizens to be free from unreasonable searches and seizures.[4] *State v. Rutter*, 93 S.W.3d 714, 723 (Mo.banc 2002). A search or seizure that occurs on a suspect's premises without a warrant is presumptively unreasonable.[5] *Id.* at 723[2].

Exceptions to the warrant requirement exist, but they are few in number and carefully delineated. *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984). As the *Rutter* court explained it, "[t]he state can overcome the presumption that a warrantless search and seizure is unreasonable by showing that it falls within one of a carefully defined set of exceptions, many of which are based on the presence of exigent circumstances." 93 S.W.3d at 723[4]. For instance, "warrantless intrusion may be justified by hot pursuit of a fleeing felon, imminent destruction of evidence, need to prevent a suspect's escape, or risk of danger to the police or to other persons inside or outside the dwelling." *Id.* at 723 n. 5.

Additionally, warrantless entries and searches are allowed when the police reasonably believe that a person within the dwelling is in need of immediate aid, *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978), or the occupants of a house are missing under *unusual circumstances. State v. Epperson*, 571 S.W.2d 260, 264–65 (Mo.banc 1978). The *Epperson* court suggested, albeit by dicta, that an objective standard was sufficient when officers, in good faith, search for missing persons in unusual cir-

---

2. In our review, we consider Motte's testimony as given at both the motion to suppress hearing and at trial. This we do because Defendant moved timely to suppress the evidence and then timely objected to its admission at trial. *See State v. Deck*, 994 S.W.2d 527, 534[9] (Mo.banc 1999); *State v. Weddle*, 18 S.W.3d 389, 391[2] (Mo.App.2000).

3. The trial judge found exigent circumstances existed because Motte did not "know until he goes in whether there's anybody harmed or . . . endangered without going in."

4. The state and federal guarantees are coextensive. *State v. Rushing*, 935 S.W.2d 30, 34 (Mo.banc 1996).

5. Most search and seizure of "building" cases speak of the expectation of privacy in "homes." It has been held, however, that "clearly a place of business comes within the protection of the fourth amendment." *State v. Varvil*, 686 S.W.2d 507, 512[6] n. 2 (Mo. App.1985). The different applicable legal principles, depending on whether the search and seizure occurred in a home or business building, need not be addressed here. This is because the parties treat the search of Defendant's building as the equivalent of a search of his home. We assume they do so based on Defendant's testimony that he occasionally slept there.

cumstances, or when they, in good faith, enter a building based on medical emergency factors. *Id.*[6]

■ When, as here, there is little or no dispute about the facts, the question of whether the Fourth Amendment has been violated is a question of law and is therefore reviewed *de novo. State v. Kimberley*, 103 S.W.3d 850, 856[11] (Mo.App.2003)

In this case, two police officers arrived on the scene; however, only one officer (Motte) testified as to the circumstances surrounding the warrantless entry and search of the building. We find his testimony insufficient, as a matter of law, to justify his entry and search under the exigent circumstances exception.

First, we note the absence of any evidence of exigent circumstances such as "hot pursuit" of a fleeing suspect or the risk of immediate destruction of evidence.

■ Second, although Motte may have been suspicious (once he arrived) that a burglary occurred at some point, no facts exist from which Motte could reasonably have concluded this was an immediate major crisis in the performance of his duty requiring prompt inspection—such as a burglary in progress or to search for victims and suspects—that would justify a warrantless search.[7] He neither saw nor heard anyone in or about the building be-fore his entry. He remembered nothing about the dispatch, other than it was a "check-on-the-well-being-of-person" call.

Significantly, Motte testified he would have remembered if the dispatcher said someone was inside and needed help, but he did not recall being told that. Nothing about the dispatch message, as Motte recalled it, would indicate to a reasonable person that emergency medical factors were implicated. The "generic" phrase "check-on-the-well-being," without more, does not bespeak an immediate major medical crisis inside a building. Nor was there evidence that the dispatcher knew about or told Motte this was a possible crime scene. No evidence was presented on whether there had been a burglary, or only vandalism, or merely an accidental glass breakage, or a door left open intentionally. Nor was there evidence regarding how long the open door and broken window conditions had existed. Although Motte arrested Defendant at the building site and could have questioned him about the broken window and open door, he either failed to make such inquiries, or he failed to mention the result of that investigation when he testified in this case. Finally, no evidence exists about (a) when the dispatcher received the call, or (b) when the dispatcher called Motte, or (c) when Motte responded.

---

**6.** The objective standard alluded to in *Epperson,* 571 S.W.2d at 265, is that prescribed by *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), to wit: "[W]ould the facts available to the officer at the moment of the seizure or the search *'warrant a man of reasonable caution in the belief'* that the action taken was appropriate?" (Citation omitted) (emphasis supplied).

**7.** As a general rule, when police arrive on the scene of a burglary *in progress,* they can make a warrantless entry into a dwelling on the basis of exigent circumstances when there exists a basis for the police to *reasonably* believe that a burglary is still in progress.

*See, e.g. In re Sealed Case,* 153 F.3d 759, 766 (D.C.Cir.1998); *United States v. Tibolt,* 72 F.3d 965, 967–70 (1st Cir.1995); *United States v. Bute,* 43 F.3d 531, 538–39 (10th Cir.1994); *United States v. Valles–Valencia,* 811 F.2d 1232, 1236 (9th Cir.1987); *United States v. Dart,* 747 F.2d 263, 267 (4th Cir. 1984); *United States v. Singer,* 687 F.2d 1135, 1144 (8th Cir.1982); *United States v. Sculco,* 82 F.Supp.2d 410, 417 (E.D.Pa.2000); *United States v. Gargano,* 575 F.Supp. 294, 296–97 (D.Ill.1983); *State v. Faretra,* 330 N.J.Super. 527, 750 A.2d 166, 169–70 (2000) and cases cited therein.

■ The justification for the exigency exception is time related, i.e., there is a need that will not brook the delay incident to obtaining a warrant. *Dorman v. United States,* 435 F.2d 385, 392 (D.C.Cir.970). "[I]t is only in the light of those circumstances and that need that the warrantless search meets the ultimate test of avoiding condemnation under the Fourth Amendment as 'unreasonable.'" *Id.* On this record, evidence of *when* the police first knew someone might need to be checked on was critical to any finding that Motte could reasonably have believed that individuals needing help might be in the building.

As explained, there was no time-frame evidence about the "check-well-being call." There were no substantiated facts that a burglary or other serious crime was in progress. Nor was there any evidence connecting the "check-well-being call" to an immediate crisis or emergency threatening someone's life or safety within Defendant's building. This lack of exigent circumstances evidence precludes a finding that Motte could have reasonably concluded he was authorized to enter this building without a warrant based on any possible relevant exigent circumstances exception. As aptly stated by Justice Jackson in his concurring opinion, "[w]hen an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some *real immediate and serious consequences* if he postponed action to get a warrant." *McDonald v. United States,* 335 U.S. 451, 460, 69 S.Ct. 191, 195, 93 L.Ed. 153 (1948) (emphasis supplied). Motte merely acted on a hunch, certainly not enough to circumscribe the constitutional proscriptions against warrantless searches and seizures.

On the facts of this case, no exigent circumstances existed which justified the warrantless entry and search of Defendant's building. Consequently, the trial court committed reversible error when it failed to suppress the evidence collected during the search and admitted such at trial. *See generally, Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Defendant's convictions and sentences on Counts I, II, and IV are reversed. As to those counts, the case is remanded. *See State v. Wood,* 596 S.W.2d 394, 398–99 (Mo.banc 1980); *State v. Taber,* 73 S.W.3d 699, 707[21] (Mo.App.2002).

***Point II: Joinder and Severance Issues***

Defendant's second point alleges the trial court committed reversible error when it overruled his "motion to dismiss for improper joinder and to sever for trial the counts involving three alleged methamphetamine labs. . . ." He claims that ruling "substantially prejudiced [him] since the jurors were likely to consider the evidence of each count on the others."

■ Initially, we note Defendant's point on appeal has two prongs, namely, error in permitting joinder and error in denying the severance motion. In his brief, Defendant admits that the pretrial motion is entitled "Motion for Severance of Offenses[;]" yet, he argues that the motion "clearly alleges error in the joinder of offenses as well." [8] We disagree with this latter premise.

Defendant's at-trial motion to sever characterized the crime as "similar felony drug offenses." By using that phrase Defendant tacitly conceded that joinder of offenses was authorized.[9] Moreover, the

---

**8.** Joinder and severance are separate and distinct issues. *State v. Warren,* 141 S.W.3d 478,

486[2] (Mo.App.2004); *State v. Hufford,* 119 S.W.3d 654, 657–58 (Mo.App.2003).

**9.** "All offenses that are of the same or similar

motion specifically alleged that it was brought pursuant to Rule 24.07 and section 545.885, i.e., provisions related solely to severance of offenses. Nowhere in the motion does Defendant allege improper joinder. Likewise, Defendant's motion for new trial only claims that the trial court erred in denying the motion for severance "for reasons stated in the motion." As such, the joinder issue is not preserved for appellate review and will not be addressed. *Hufford*, 119 S.W.3d at 657.

■■■■ As to Defendant's preserved claim of trial court error, he is correct in saying that a trial court has discretion to sever offenses, even when joinder is proper. *Warren*, 141 S.W.3d at 486. Thus, "[i]f it appears that a defendant is prejudiced by the joinder of offenses, a court may grant severance upon a particularized showing of substantial prejudice." *State v. Tobias*, 873 S.W.2d 650, 653 (Mo.App. 1994).

Here, however, Defendant's motion did not make "particularized" allegations of prejudice. To the contrary, his allegations were conclusory, at best. In their entirety, his prejudice allegations read:

> "3. Joinder of these three alleged criminal offenses would result in substantial prejudice to defendant because the jury would likely consider evidence of guilt on one charge as evidence of guilt on the other charge. Further, de-

fendant may wish to testify regarding one charge but not on another charge."

Allegations nearly identical to those above were held fatally defective in *State v. Bechhold*, 65 S.W.3d 591 (Mo.App.2002). The *Bechhold* court, in discussing the appellant's claim that using evidence of one crime to convict on another was prejudicial error, stated: "The general allegation that the jury would likely consider evidence of guilt on one charge as evidence of guilt on another charge does not meet the requirement of a particularized showing of substantial prejudice." *Id.* at 596–97[14].

Further, in *Bechhold*, the appellant argued—as Defendant does here—that failure to sever was prejudicial because he (appellant) may wish to testify in one case, but not the other. The *Bechhold* court ruled that allegation was likewise too general. *Id.* at 597. " '[I]t is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine.' " *Id.* (quoting *State v. Seagraves*, 700 S.W.2d 95, 99 (Mo. App.1985)).

■■■■ As was true in *Bechhold*, Defendant's severance motion allegations were too general to show that the trial court abused its discretion. Sufficient facts and a particularized showing must be made because the trial court considers the motion before the trial begins.[10] General

character ... may be charged in the same indictment or information in separate counts." Supreme Court Rule 23.05 (2004); *see also* § 545.140.2.

**10.** Although a court has a continuing duty to order severance during the trial if necessary to achieve a fair result, no such argument has been advanced in this case that the court failed in this duty. *See Bechhold*, 65 S.W.3d at 597. If such a contention had been made, it would have failed. The evidence was not

complex and it was presented to the jury in a straightforward and well-delineated manner. Moreover, the evidence was strong on all counts. Further, the jury showed that it could distinguish among all of the evidence presented because it acquitted him on two of the charges. The foregoing demonstrates a complete lack of prejudice. *See State v. Duren*, 556 S.W.2d 11, 20 (Mo.banc 1977); *State v. Mitchell*, 999 S.W.2d 247, 255–56 (Mo.App. 1999); *State v. Kelley*, 901 S.W.2d 193, 202–03 (Mo.App.1995).

allegations, such as those made here, essentially ask the court to speculate on the future. Point denied.

The judgment of convictions and sentences for Counts I, II, and IV is reversed, and the case is remanded as to those counts. As to all other counts, the judgment is affirmed.[11]

BATES, C.J., and BARNEY, J., concur.

11. In a motion taken with the case, Defendant asks this court to remand the case to the trial court for a hearing on newly discovered evidence. The evidence, however, would merely impeach the testimony of one of the state's witnesses. This provides no basis for the granting of a new trial. *Rutter*, 93 S.W.3d at 730. Consequently, Defendant's motion is denied.