**Robert SIMMONS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent– Respondent.**

**No. 28451.**

Missouri Court of Appeals, Southern District, Division Two.

March 10, 2008.

---

Mark A. Grothoff, for Appellant.

Jeremiah W. (Jay) Nixon, Atty Gen, and Jamie Pamela Rasmussen, Assistant Attorney General, for Respondent.

DON E. BURRELL, Judge.

This appeal stems from a denial of Robert Simmons' (Movant) Rule 29.15[1] motion for post-conviction relief. In his single point on appeal, Movant alleges his trial counsel was ineffective for failing to inves-

1. All references to rules are to Missouri Rules of Criminal Procedure (2005)

tigate and call certain witnesses because he believed their testimony would have resulted in a different outcome in his criminal trial.

## Standard of Review

Appellate review of a motion court's ruling on a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the court are clearly erroneous. Rule 29.15(k). The motion court's findings will be found to be clearly erroneous only if, upon review of the entire record, the appellate court is left with a firm and definite impression that a mistake has been made. *McQuary v. State*, 241 S.W.3d 446, 451 (Mo.App. W.D.2007). The movant bears the burden of demonstrating that the ruling was clearly erroneous. *Allen v. State*, 233 S.W.3d 779, 782 (Mo.App. E.D.2007).

## Facts

Movant was convicted on nine felony charges related to illicit drugs. The charges arose out of Movant's activities on three separate dates: November 11, 2001; March 2, 2002; and July 11, 2002. On appeal, this court affirmed the convictions as to six of the counts and reversed on the remaining three. *State v. Simmons*, 158 S.W.3d 901, 910 (Mo.App. S.D.2005). In June of 2005, Movant filed his Rule 29.15 motion which claimed ineffective assistance of counsel. After an evidentiary hearing held November 29, 2006, the motion court issued its findings of fact and conclusions of law denying Movant's motion.

On appeal, Movant only raises issues arising out of the events that occurred on March 2, 2002. On that date, Springfield Police Officer Travis Wilson (Wilson) was dispatched to a location to investigate a report of vandalism to a business. After speaking with the business owner at that location, Wilson began gathering further information by contacting people at neighboring businesses and residences. Wilson observed Robert Luckinbill, Movant's son, exiting the garage door of one of these nearby businesses (the Building). Shortly thereafter, another individual, Gary Moore (Moore), left the Building through its garage door. After learning from Moore that several other people remained inside the Building, Wilson indicated to Moore that he wished to speak with the persons who were still inside.

Upon approaching the garage door of the Building, Wilson detected a strong chemical odor that he believed indicated the presence of a methamphetamine lab. Wilson was eventually allowed to enter the Building and noticed that the chemical odor had greatly increased. Wilson also found Jackie Davis (Jackie), Janice Davis (Janice), and James Luckinbill (James) inside the Building.[2] Wilson then asked whether anyone else was inside the Building and Janice replied that no one was. Several minutes later, Movant stepped out from one corner of the Building and approached Wilson. At that point Wilson called for backup and, after additional officers had arrived, conducted a protective sweep of the Building to determine if any other persons were present. While conducting the sweep, the officers observed in plain view several items used in the manufacturing of methamphetamine (a jar with some clear liquid in it, plastic tubing, several bottles of sulfuric acid—some of which had rubber tubes attached to them—a water bottle, and an acid generator).

---

**2.** Several individuals are referred to by first name because they share the same last name. No disrespect is intended.

After the protective sweep was conducted, Wilson asked whether anyone had any weapons and Movant admitted that he had a pocketknife. As Wilson removed the knife from Movant's pocket, he noticed a plastic bag containing a powder substance attached to the knife. At that time, Wilson read Movant his *Miranda*[3] rights and arrested him for possession of a controlled substance. Movant told Wilson that the powder in the bag was methamphetamine and, after Wilson mentioned the various objects he had observed during his protective sweep, Movant also admitted that he had manufactured methamphetamine at the Building that morning. Movant told Wilson that Movant was only using the methamphetamine to get high and not to sell. Movant also admitted that there was ether—another component used in the manufacturing of methamphetamine—inside the Building and showed Wilson where it was located. Movant later pled guilty to possession of a controlled substance based on his possession of the methamphetamine on March 2, 2002.

Before his criminal trial on the remaining charges, Movant attempted to suppress all of the evidence discovered as a result of the March 2, 2002 search of the Building. The trial court denied Movant's motion to suppress, holding that the police did not need a warrant to conduct the search because exigent circumstances existed.

### *Analysis*

In order to prevail on a claim of ineffective assistance of counsel, a movant must demonstrate first, that his attorney failed to use the customary skill and diligence that a reasonably competent attorney would use under similar circumstances; and second, that he was prejudiced by his counsel's failure to do so. *Ringo v. State,* 120 S.W.3d 743, 745 (Mo. banc 2003); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prove prejudice, a movant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. If the movant fails to meet either prong, then the reviewing court need not address the remaining one. *Id.* at 697, 104 S.Ct. 2052; *Collins v. State,* 231 S.W.3d 861, 863 (Mo.App. S.D.2007). Additionally, reviewing courts presume that trial counsel acted reasonably and professionally and that any challenged action was a part of sound trial strategy. *Winfield v. State,* 93 S.W.3d 732, 736 (Mo. banc 2002).

To demonstrate ineffective assistance of counsel in failing to call a witness to testify, a movant must prove that the witness would have actually testified if he had been called and that the testimony would have aided the movant's defense. *White v. State,* 939 S.W.2d 887, 896 (Mo. banc 1997). Additionally, when claiming ineffective assistance of counsel based on counsel's decision not to call a witness, a movant must overcome the presumption that counsel's decision was sound trial strategy. *State v. Mottley* 953 S.W.2d 168, 170–1 (Mo.App. E.D.1997).

Movant argues that his trial counsel was ineffective for failing to investigate and call as witnesses James, Jackie, and Janice. According to Movant, had trial counsel contacted each of these individuals and called them as witnesses, both the outcome of his trial and of a motion to suppress he made prior to his trial would have been

---

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

different. We address each claim separately.

### a. The Suppression Hearing

Jackie and Janice testified in person at the post-conviction relief hearing and James' testimony was presented by deposition. If these three individuals had been called to testify at the hearing on Movant's motion to suppress they would have offered the following relevant evidence: 1) the Building smelled of a kerosene heater; 2) the police did not ask permission to enter; 3) Movant was heard telling the police to leave after finding out that they did not have a warrant; and 4) no one gave the police permission to enter the Building.

 The Fourth Amendment to the United States Constitution guarantees that citizens will not be subject to unreasonable searches or seizures. U.S. Const. amend. IV. A search conducted without a warrant is presumptively unreasonable. *State v. Kempa*, 235 S.W.3d 54, 60 (Mo.App. S.D. 2007). An exception to the general rule that a search requires a warrant exists when exigent circumstances are present. *State v. Young*, 991 S.W.2d 173, 176 (Mo. App. S.D.1999). Exigent circumstances exist if the time needed to obtain a warrant would endanger life, allow a suspect to escape, or risk the destruction of evidence. *State v. Mahsman*, 157 S.W.3d 245, 249 (Mo.App. E.D.2004).

 The trial court in Movant's criminal trial found that the police did not need a warrant to search the Building because of the existence of exigent circumstances.[4] Therefore, whether or not anyone consented to the police entering the Building is irrelevant. Similarly immaterial is the tes-

timony that Movant asked the police if they had a warrant then told them to leave when they said they did not. The trial court based its finding of exigent circumstances on Wilson's testimony that he first detected a strong chemical odor around the building and thereafter determined it was coming from inside the Building. Wilson testified that he recognized the odor as one associated with methamphetamine labs. Movant merely points out that Jackie, James, and Janice smelled a kerosene heater. Movant does not argue that it was the smell of the kerosene heater, and not the smell of a methamphetamine lab, that Wilson detected emanating from the Building. Based on the above, we find no clear error in the motion court's determination that Movant's trial counsel was not ineffective for not calling Jackie, Janice, or James to testify at the suppression hearing.

### b. The Trial

 Movant further argues that, had his trial counsel not been ineffective, Jackie, James, and Janice would have provided testimony at his trial that would have corroborated Movant's own testimony and also contradicted that of Wilson and other police officers. Movant claims that if these three individuals been called, they would have provided the following relevant testimony at his trial: 1) the Building smelled of a kerosene heater; 2) the police did not ask permission to enter the Building; 3) Movant was in the bathroom when the police first entered; 4) when the police saw Movant they handcuffed him and searched him; 5) no one heard Movant tell the police that he had manufactured methamphetamine earlier that morning; 6) no one heard the police read Movant his *Miranda* rights; and 7) none of them saw any

---

4. We express no opinion as to the correctness of the trial court's finding of exigent circum- stances.

of the methamphetamine laboratory materials that the officers said were in plain sight.

Additionally, Movant states that James would have testified that: 1) he and Movant arrived at the Building approximately one hour before the police did; 2) they had not been at that location for several days; 3) he had been with Movant for the entire day and during that time Movant had not engaged in any methamphetamine production; 4) he and Movant arrived at the Building on the evening of March 2, 2002 after visiting friends out of town; and 5) Jackie and Janice arrived at the Building about fifteen minutes after he and Movant did. James also testified that, in March of 2002, he and Movant were actually living in the Building. Jackie would have testified that he and Janice arrived at the location about thirty minutes before the police entered, whereas Janice would have placed their arrival at closer to one hour before the police appeared.

During his criminal trial, Movant chose to testify in his own defense. Movant told the jury that, prior to arriving at the Building on March 2nd, he and James had been at another of Movant's residences. Movant also stated that he only occasionally slept at the Building.

At his post-conviction relief hearing, Movant's trial counsel testified that he had not called Jackie or Janice because their statements were inconsistent with the information Movant had told him. Trial counsel stated Movant had told him that Movant was not living at the Building in March of 2002 but that Jackie and Janice stated Movant was, in fact, living there. Counsel also testified that he thought Jackie's initial statement to the police that Movant was not in the Building would subject her to impeachment. He also believed that Jackie's and Janice's claim that they did not see any of the methamphet-amine lab items that the police said were in plain view would diminish their own credibility as well as Movant's. Additionally, Movant's trial counsel stated that he did not call James because James was in prison at the time of trial.

██ "Counsel may and often does elect not to call a witness because he judges the witness's testimony will not be helpful and may be damaging." *State v. Hayes*, 785 S.W.2d 661, 663 (Mo.App. W.D.1990). Movant has not demonstrated that his trial counsel's decision to not call James, Jackie, or Janice was not part of sound trial strategy. "When defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel." *Winfield*, 93 S.W.3d at 739.

After a thorough review of the record, this Court is not convinced that the motion court clearly erred in finding that Movant's trial counsel was not ineffective. Movant's counsel testified that he decided not to call Jackie and Janice because they had provided him with information inconsistent with the information Movant had provided. Additionally, James' testimony at Movant's post-conviction relief motion was inconsistent with Movant's testimony at his criminal trial. Movant's point is denied and we affirm the trial court's denial of his post-conviction motion.

LYNCH, C.J., and BARNEY, P.J., Concur.