**Richard PLACKE, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SD 30679.

Missouri Court of Appeals,
Southern District,
Division One.

May 25, 2011.

Kyle L. Warren, Poplar Bluff, MO, for Appellant.

Chris Koster, Atty. Gen. and James B. Farnsworth, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Richard Placke ("Movant") appeals the motion court's denial following an evidentiary hearing of his "SECOND AMENDED MOTION UNDER RULE

29.15." [1] In his two points relied on, Appellant asserts the motion court erred in denying his request for postconviction relief because he received ineffective assistance of counsel due to his trial counsel's failure to interview certain witnesses and his failure to object to evidence of "uncharged crimes, wrongs and bad acts...."

The record reveals Movant was charged via "INFORMATION" with one count of the unclassified felony of statutory sodomy in the first degree, a violation of section 566.062, and one count of the unclassified felony of attempted statutory rape in the first degree, a violation of section 566.032.[2] The testimony below revealed that Movant was charged with engaging in deviant sexual intercourse on several occasions with B.K. ("Victim"), who was the niece of Movant's live-in girlfriend. Following a jury trial, Movant was sentenced to ten years on the statutory sodomy charge and seven years on the attempted statutory rape charge with the sentences to run concurrently. Movant appealed these convictions to this Court in *State v. Placke*, 290 S.W.3d 145 (Mo.App.2009). This Court affirmed the convictions on the merits, but remanded the matter for re-sentencing due to plain error in sentencing Movant to a term of imprisonment greater than recommended by the jury. *Id.* at 156–57. Upon re-sentencing, he was apparently sentenced to seven years imprisonment on the statutory sodomy charge and ten years imprisonment on the attempted statutory rape charge.

On October 20, 2008, Movant timely filed his *pro se* Rule 29.15 motion seeking postconviction relief. Movant was thereafter appointed counsel and an amended motion was filed on January 11, 2010. Following an evidentiary hearing on April 12, 2010,

the motion court denied Movant's request for relief in a "JUDGMENT" and "FINDINGS OF FACT AND ... CONCLUSIONS OF LAW" entered on June 30, 2010. This appeal by Movant followed.

Appellate review of a motion court's ruling on a Rule 29.15 motion for postconviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *see Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). "The findings of the motion court are presumptively valid." *Fry v. State*, 244 S.W.3d 284, 285 (Mo.App. 2008). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made." *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997).

A movant bears the burden of proving, by a preponderance of the evidence, that he received ineffective assistance of counsel. Rule 29.15(f). To establish ineffective assistance of counsel, a movant must show that: (1) "counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney;" and (2) counsel's poor performance prejudiced the defense. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the first prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Movant bears the heavy burden of overcoming the motion court's presumption that trial counsel's conduct was reasonable and effective. *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001).

---

1. All rule references are to Missouri Court Rules (2010).

2. All statutory references are to RSMo 2000.

The second prong of the *Strickland* test is met when a movant shows that his attorney's errors affected the judgment. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A movant can prove that the judgment was affected when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Movant must prove each portion of this two-pronged performance and prejudice test in order to prevail on his ineffective assistance of counsel claim. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

■ In his first point relied on, Movant asserts the motion court erred in denying his Rule 29.15 motion because his trial counsel "was ineffective for failing to investigate and interview potential witnesses prior to trial...." He maintains that had his counsel conducted these interviews it would "have provided [Movant] with a viable defense ..." to both charged counts. His argument asserts that trial counsel, Steven Lynxwiler ("Attorney Lynxwiler"), was ineffective for failing to interview and locate Marian Lincoln ("Ms. Lincoln"), Russ Lincoln ("Mr. Lincoln"), Bill Wahlberg ("Mr. Wahlberg") and Carol Wahlberg ("Ms. Wahlberg"). He maintains that had these witnesses been called they would have testified that, contrary to Victim's assertions that Movant tried to rape her in his above-ground swimming pool "somewhere right around the 4th of July holiday of 2006," the swimming pool at Movant's home was, instead, "in an unswimable condition" when the potential witnesses visited the home for a barbeque on July 4, 2006. He asserts that such testimony would have refuted Victim's testimony and given additional credence to the defense theory that Victim fabricated her allegations against Movant.

At the evidentiary hearing on this matter, Attorney Lynxwiler testified that Movant discussed the aforementioned potential witnesses with him during trial preparations, but their discussions about them "were related to more collateral-type issues." He stated he talked to Movant and his girlfriend about their relationships with the four potential witnesses and "talked about how those witnesses could be used as character witnesses." He also related that at some point they discussed the potential witnesses in relation to "some other things to do with the case." He recalled that during Movant's trial Ms. Lincoln spoke with him about having seen the condition of the pool at Movant's home, but he did not recall the conversation specifically or even where the conversation occurred. He related that "[a]t some point [Ms. Lincoln] told ..." him that the pool was "dirty" and "scummy" "in July" of 2006. He additionally stated Ms. Lincoln did testify during the penalty phase of Movant's trial as a character witness. Furthermore, he related he did not attempt to contact the other three potential witnesses because it was his understanding that "their information was substantially the same as what Ms. Lincoln was telling [him]."

Attorney Lynxwiler related that the swimming pool issue was one that he "didn't want to bring up [because] with the allegations as they were and the depositions that [had been] conducted, [Victim] was kind of bouncing back and forth about when certain things had happened." He recited that

> [t]o the best of [his] recollection at d[epositions], there w[ere] actually three incidents that had c[o]me out; one of which was an incident that happened in the pool, another of which was an incident that had happened in a barn, and ... there was also another incident ... on a vehicle. And it was one of those things where [he] was a little bit afraid

of ... what that would do. [He] was afraid it would ... muddy the waters. He recalled telling Ms. Lincoln that he

was worried about her testimony, that [he] didn't ... feel that [he] needed to [go into the condition of the pool] at that time. You know, [there was] some different testimony at d[epositions] that [he] could ... use to show that [Victim] ... was lying. And it was one of those issues where [he] felt that it would ... cause more confusion to the jury than what it would do good. [He] didn't want the jury to think [they] were just trying to throw everything at the wall that [they] could and make something stick.

He related that the "basic overall [defense] strategy was to show that [V]ictim was lying" and that while testimony as to the condition of the pool "could have" played into that strategy, he felt "that it'd be one of those things where the jury would believe—because of that close relationship that [Movant] had with ... the witnesses, that they would think it was an excuse that it was ... potentially made up, and that was [his] judgment call then." Attorney Lynxwiler maintained that his decision not to explore the issue of the pool's condition by calling Ms. Lincoln to testify or by interviewing Mr. Lincoln and the Wahlbergs was a matter of trial strategy.

Ms. Lincoln testified at the evidentiary hearing that she attended a barbeque at Movant's home on July 4, 2006, and she observed that no one was swimming in the pool because "[t]he water was pretty scummy." She related when she returned to the home "within that week" she observed Movant and his girlfriend "cleaning" the pool. She related that she spoke with Attorney Lynxwiler on two occasions—one time prior to trial and one time during trial, but just prior to the jury's adjournment for deliberations. She stated that she spoke with him about her availability as a witness, but she never spoke with him about what her testimony would entail and she never discussed the condition of the pool with him. She related she would have testified as to the condition of the pool had she been called to do so.

Mr. Lincoln testified that he also attended the barbeque at Movant's home on July 4, 2006, and that at that time the swimming pool "was full of algae and it looked real scummy." He related when he returned with his wife the following Saturday, the pool "was just kind of laying there on the ground" with "most of the water ... spilled out of it." It was his "recollection that it hadn't been cleaned up or anything." He stated he was never contacted by Mr. Lynxwiler and he would have testified had he been called to do so.

Mr. Wahlberg testified at the motion hearing that at Movant's July 4, 2006, barbeque the water in his above-ground pool was "stagnant.... It was green, slimy, you know, a pool that hadn't been taken care of in quite some time." He related he was not contacted by Attorney Lynxwiler and he would have testified had he been asked to do so.[3]

After hearing the aforementioned evidence at the evidentiary hearing, the motion court concluded Attorney Lynxwiler's failure to interview the proposed witnesses and call them to testify "was part of [his] trial strategy made after a reasonable investigation. This strategy decision does not furnish a ground for finding ineffective assistance of counsel." The motion court found that Attorney Lynxwiler's "failure ... to attempt to impeach [Victim's] testimony by these witnesses did not deprive [M]ovant of a viable defense or change the

---

**3.** Mr. Wahlberg also related that he and Ms. Wahlberg were divorced at the time of the evidentiary hearing and he had no knowledge as to her whereabouts.

outcome of the trial" such that Movant failed to prove by a preponderance of the evidence "that further investigation of the condition of the pool, or testimony as to its condition, would have improved his position, or provided a viable defense, or changed the outcome of the trial." As such, the motion court denied Movant's request for relief.

■■■ " 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary.' " *Edwards v. State,* 200 S.W.3d 500, 516 (Mo. banc 2006) (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052). " '[A] defense attorney has an obligation to investigate the evidence available on behalf of [his] client and then to take the steps necessary to produce that evidence at trial.' " *Kuehne v. State,* 107 S.W.3d 285, 300 (Mo.App.2003) (quoting *Honeycutt v. State,* 54 S.W.3d 633, 647 (Mo.App.2001)). In order to demonstrate that defense counsel was ineffective in failing to call a witness to testify, the movant must first prove that his attorney's failure to call this witness was something other than reasonable trial strategy, and he must establish that this witness could have been located through reasonable investigation, that he would have testified if called, and that his testimony would have provided the accused with a viable defense. *Hurst v. State,* 301 S.W.3d 112, 117 (Mo. App.2010). Trial counsel's decision not to call a witness is "presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise." *Williams v. State,* 168 S.W.3d 433, 441 (Mo. banc 2005); *see Sanders,* 738 S.W.2d at 858.

> The selection of witnesses and the introduction of evidence are questions of trial strategy. Allegations of ineffective assistance of counsel relating to matters of trial strategy do not provide a basis for postconviction relief, for counsel is allowed wide latitude in conducting the defense and is entitled to use his or her best judgment in matters of trial strategy.

*State v. Borders,* 844 S.W.2d 49, 54 (Mo. App.1992) (internal citations omitted). "Only rarely does a court find that failure to interview witnesses is sufficient to justify the finding of ineffective assistance of counsel." *State v. Buchanan,* 836 S.W.2d 90, 93 (Mo.App.1992).

■■■ Here, Attorney Lynxwiler's decision not to interview or call the above witnesses was a matter of trial strategy. It is clear that while the Lincolns could testify as to the condition of the pool on July 4, 2006, as well as approximately a week later, they could offer no testimony as to its condition prior to those dates. Likewise, the Wahlbergs could only testify as to the condition of the pool on the date of the barbeque and not as to its condition before or after July 4, 2006. Victim testified at trial that Movant attempted to rape her "somewhere right around the 4th of July holiday of 2006" and Movant was charged in the information with attempting to rape Victim "on or about July 4, 2006...." The testimony that could have been offered by these witnesses would not have necessarily aided Movant's defense and, as stated by Attorney Lynxwiler at the evidentiary hearing, could have operated to confuse the jury. In fact, the testimony from the Lincolns in relation to the fact that Movant cleaned the pool following the July 4, 2006, barbeque could actually have bolstered the testimony of Victim who testified that the attempted rape occurred around July 4, 2006, after Movant, his girlfriend, and Victim had cleaned the pool. An attorney is not ineffective for not calling a witness who would contradict the defendant's testimony or undermine the

theory of defense. *Maclin v. State*, 184 S.W.3d 103, 110 (Mo.App.2006). Clearly, " '[c]ounsel may and often does elect not to call a witness because he judges the witness's testimony will not be helpful and may be damaging.' " *Simmons v. State*, 247 S.W.3d 86, 91 (Mo.App.2008) (quoting *State v. Hayes*, 785 S.W.2d 661, 663 (Mo. App.1990)). Movant in the present matter has not demonstrated that Attorney Lynxwiler's decision not to interview the Wahlbergs and Mr. Lincoln and not to call the Wahlbergs or the Lincolns to testify at trial was a matter of sound trial strategy. "When defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel.' " *Id.* (quoting *Winfield v. State*, 93 S.W.3d 732, 739 (Mo. banc 2002)). Movant has failed to prove that he received ineffective assistance of counsel due to Attorney Lynxwiler's decisions as to the four proposed witnesses. Point I is denied.

 In his second point relied on, Movant maintains the motion court erred in denying his request for postconviction relief in that his trial counsel was ineffective "for failing to object to uncharged crimes, wrongs and bad acts . . . ." He asserts Attorney Lynxwiler's actions violated his constitutional rights because "the evidence of uncharged crimes, wrongs and bad acts . . . prejudiced the jury with otherwise inadmissible propensity evidence." Specifically, he takes issue with evidence introduced by his attorney that he also had inappropriate sexual contact with his girlfriend's daughter, T.D.

We note that on direct appeal Movant requested plain error review of purported trial court errors in admitting testimony that Movant had sexually abused T.D. *Placke*, 290 S.W.3d at 152–53. This Court stated:

[Movant] argues the admission of the challenged evidence was so prejudicial that it resulted in a manifest injustice or miscarriage of justice. This Court disagrees. At trial, [Movant] *presented evidence of alleged sexual abuse of T.D. by himself during his casein-chief [Attorney Lynxwiler] intentionally did so for the strategic purpose of attempting to show that the allegations made by [Victim] and T.D. were lies.* For example, during T.D.'s direct examination, [Attorney Lynxwiler] elicited testimony from her that she had said [Movant] raped her. During surrebuttal, [he] also called [a Children's Division caseworker], who testified on direct examination that T.D. said [Movant] had touched her as often as once a day. In addition, [the caseworker] testified that T.D. said [Movant] 'poked his penis in between her vagina and bottom hole,' and that he 'pushed his private against her, but it did not go in.' [Movant] could not have been prejudiced by the admission of [testimony relating to possible abuse of T.D. when] he elicited the same type of testimony from his own witnesses. . . . [Movant] cannot seek plain error review arising from failed tactical and strategic decisions made at trial. [Movant] attempts to avoid the consequences of his actions by asserting that T.D. and [the caseworker] would not have testified at trial 'if the State had not brought in the improper hearsay and propensity evidence in the first place.' That assertion is contradicted by the transcript. [Attorney Lynxwiler] stated at the April 2008 pre-trial conference that he planned to call [Victim's aunt] and T.D. as witnesses. *In opening statement, [he] told the jury he would present evidence that [Victim] and T.D. made up their allegations against [Movant]. [Attorney Lynxwiler] said T.D. was going to testify to that effect and explain*

*why these allegedly false allegations had been made. T.D. did exactly that during her direct examination by [Attorney Lynxwiler].* [Movant's] first argument has no merit.

*Id.* at 153–54 (emphasis added).

In the present proceedings, the motion court, citing to *Skipper v. State,* 209 S.W.3d 552, 554 (Mo.App.2006), concluded that "[a]lthough counsel's trial strategy was unsuccessful, the trial strategy decisions did not result in a substantial deprivation of [M]ovant's right to a fair trial," such that he was not entitled to postconviction relief. The motion court's ruling is supported by *Leisure v. State,* 828 S.W.2d 872, 874 (Mo. banc 1992), which stands for the proposition that "[i]ssues decided upon direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a [postconviction] proceeding." "Further analysis would be unnecessary but for the Supreme Court's later ruling in *Deck v. State,* 68 S.W.3d 418 (Mo. banc 2002)." *Shifkowski v. State,* 136 S.W.3d 588, 590 (Mo.App.2004). Interpreting the *Deck* ruling, this Court in *Skipper,* 209 S.W.3d at 554, observed that in

> considering whether plain error occurred in a direct appeal, the determination that must be made is whether manifest injustice or miscarriage of justice occurred by reason of erroneous rulings at trial. Whereas, in reviewing a [postconviction] judgment directed to a claim of ineffective assistance of counsel, the issue is not whether a just result was reached, but whether, through dereliction of counsel, the reviewing court's confidence is *undermined in the fairness of the proceeding.* Notwithstanding the different standards of review for determining plain error on direct appeal and considering claims of [postconviction] relief when there are allegations of ineffective assistance of counsel, it is only in rare cases that those differences would cause a court to grant [postconviction] relief after it has denied relief on direct appeal.

(Emphasis added.)

 Here, we do not perceive Movant's claim of ineffective assistance of trial counsel to be one of those rare cases that would compel this Court to grant postconviction relief because our confidence is undermined in the fairness of the proceedings at trial, particularly after this Court has previously denied relief on direct appeal on the basis of plain error review. *See Shifkowski,* 136 S.W.3d at 590. As already stated, as a matter of trial strategy, during opening statements and at trial, Movant's attorney introduced evidence relative to T.D.'s allegations that Movant had engaged in sexual abuse of both Victim and T.D. in an attempt to destroy Victim's credibility by having T.D. recant her testimony and explain why the allegedly false allegations had been made against Movant. "[Movant] cannot seek plain error review arising from failed tactical and strategic decisions made at trial," *Placke,* 290 S.W.3d at 154, such that he cannot recast his evidentiary claim as one of ineffective assistance of counsel due to Attorney Lynxwiler's failure to object to such evidence. Given the circumstances of this case, "[w]hen, as here, a plain error point was reviewed on direct appeal and the appellate court concluded that no error occurred, the issue cannot be relitigated in a [postconviction] proceeding." *Shifkowski,* 136 S.W.3d at 591; *see Ringo v. State,* 120 S.W.3d 743, 744–46 (Mo. banc 2003). Point II is denied.

The judgment and findings of fact and conclusions of law entered by the motion court are affirmed.

LYNCH, J., and BURRELL, J., concur.